UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE №:

JOSIAH COLON; BRANDON KLING;
ERIC MELE; WILLIAM MARTIN;
and 2ND AMENDMENT ARMORY,
 a Florida profit corporation,

*Plaintiffs,*

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, STEVEN
DETTELBACH, in his official capacity as
Director of the Bureau of Alcohol, Tobacco,
Firearms, and Explosives, UNITED STATES
DEPARTMENT OF JUSTICE, and
MERRICK B. GARLAND, in his official
capacity as Attorney General, U.S.
Department of Justice,

*Defendants.*

_____/

## **COMPLAINT**

1.     Defendant officials at the Bureau of Alcohol, Tobacco, Firearms and Explosives have engaged in conduct violative of the Administrative Procedures Act, and Second and Fifth Amendments to the United States Constitution.

2.     In an aggressive misinterpretation of laws concerning firearms that are in no way longstanding, Defendants threaten Plaintiffs, and an unknowable number of other Americans for the simple possession of firearms.

1

3. The Defendants' wrongdoing is ongoing. Plaintiffs therefore seek declaratory and injunctive relief requiring Defendants to cease their unlawful conduct.

## I.   PARTIES

### A. Plaintiffs

4. Plaintiff Josiah Colon ("Colon") is a natural person, citizen of the United States and the State of Florida, county of Hillsborough. Colon works as a branch manager of a financial institution in Polk County and is a part-time college student. Colon depends on a Palmetto State Armory AK-P GF3 with an attached stabilizing brace for lawful purposes including defense of hearth and home. A firearm configured like Colon's was listed by ATF in its 2023 rulemaking as a short barreled rifle. Colon routinely travels interstate and relies on his firearms to ensure his personal safety. Colon's ability to lawfully possess, alienate, and travel with his firearms are directly threatened by the unlawful actions of Defendants.

5. Plaintiff Brandon Kling ("Kling") is a natural person, citizen of the United States and the State of Florida, city of Largo. Kling is employed by the Sixth Judicial Circuit of Florida and attends Family Oasis Church. Kling owns two AR-style pistols with attached stabilizing braces which he built using commonly available AR components, and an AR-15-derived receiver he lawfully machined for himself. Kling routinely travels out-of-state to visit

friends and family, as well as to attend shooting events hosted by Project Appleseed, where Kling serves as an instructor. Kling depends on his AR pistols with attached stabilizing braces for lawful purposes such as self-defense, especially while traveling as Kling has found them to be the easiest to travel with while meeting airline regulations. Kling's ability to lawfully possess, alienate, and travel with his firearms are directly threatened by the unlawful actions of Defendants.

6.     Plaintiff Eric David Mele ("Mele") is a natural person, citizen of the United States and the State of Florida, city of Groveland. Mele is an AC service contractor—likely the most valuable and honorable trade for a Floridian to undertake—and depends on his AR-type pistol with attached stabilizing brace for lawful purposes such as self-defense. Mele depends on this firearm as, being a business owner in the AC industry, he occasionally finds himself in areas where the need for an effective mechanism of self-defense is acute. Additionally, Mele occasionally travels out of state and brings his firearm with him. Mele's ability to lawfully possess, alienate, and travel with his firearms are directly threatened by the unlawful actions of Defendants.

7.     Plaintiff Ted William Martin ("Martin") is a natural person, citizen of the United States and the State of Florida. Martin is a veteran of the United States Armed Forces and owns 2nd Amendment Armory, a firearms retailer in Brandon, Florida. Martin depends on firearms with attached stabilizing braces

for lawful purposes such as defense of hearth, home, and his business. Martin's ability to lawfully possess, alienate, and travel with his firearms are directly threatened by the unlawful actions of Defendants.

8.     Plaintiff 2nd Amendment Armory is a private business corporation that is headquartered and has its principal place of business in the State of Florida, city of Brandon. 2nd Amendment Armory is in the business of selling firearms parts and accessories, and has in its inventory pistols with attached stabilizing braces that are directly affected by the unlawful actions of Defendants.

### B. Defendants

9.     Defendant United States Department of Justice ("DOJ") is, and was at all relevant times, an executive department of the United States subject to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 551(1). The DOJ is headquartered in Washington, DC.

10.     Defendant Merrick Garland is the Attorney General of the United States. He is sued in his official capacity. In that capacity, he oversees the DOJ and its components. He is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

11.     Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is, and was at all relevant times, a component of the DOJ subject to the APA. *See* 5 U.S.C. § 551(1). ATF is headquartered in Washington DC.

4

12.     Defendant Steven Dettelbach is the Director of ATF. He is sued in his official capacity. In that capacity, he is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

## II.     JURISDICTION AND VENUE

13.     This Honorable Court has original federal question jurisdiction over this action because it arises under the Constitution and laws of the United States. 28 U.S.C. § 1331.

14.     This action seeks declaratory, injunctive, and other relief pursuant to the Constitution of the United States of America and the laws of the United States.

15.     There exists here an active, justiciable controversy between the parties about whether the DOJ complied with the APA, 5 U.S.C. §§ 551-559, violated the Second and Fifth Amendments to the Constitution, and exceeded the limits of the tax and spend clause in promulgating the 2023 rulemaking as it pertains to firearms with barrels less than sixteen inches. The rulemaking is attached to this complaint as Exhibit A. Declaratory relief will resolve this controversy and eliminate the burdens unlawfully imposed on Plaintiffs.

16.     This Honorable Court constitutes a proper venue for this action because this action is against officers and agencies of the United States,

multiple plaintiffs reside in this judicial district, and no real property is involved in the action. *See* 28 U.S.C. § 1391(e)(1)(C).

## III.   BACKGROUND

### A. The National Firearms Act & Gun Control Act

17.   The National Firearms Act of 1934 ("NFA"), Pub.L. 73-474, 48 Stat. 1236 imposed a manifestly prohibitory tax on the making and transfer of "firearms," as defined in the NFA, as well as imposing a burdensome tax— stylized as a "special (occupational) tax"—on persons and entities engaged in the business of importing, manufacturing, and dealing in firearms covered by the NFA. *See* ATF, *National Firearms Act*, https://www.atf.gov/rules-and-regulations/national-firearms-act (In ATF's own words, the NFA's "underlying purpose was to curtail, if not prohibit, transactions in NFA firearms." Not quite a revenue-raising purpose or result. *Cf. Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012)).

18.   The NFA requires that all firearms within its purview be registered with the Secretary of the Treasury.

19.   In its original drafts, the NFA imposed a prohibitory tax on the transfer and possession of handguns. Short barreled rifles and shotguns (hereinafter "SBR"s and "SBS"s) were added to the Act in order to prevent individuals from circumventing the handgun tax by simply cutting down long guns into what would be the effective equivalent of a handgun. Prior to

passage, the handgun regulations were removed from the NFA, but the restrictions on SBRs and SBSs remained, a vestige of the handgun regulations.[1]

20.    In 1968, Congress passed the Gun Control Act of 1968 ("GCA"), Pub. L. No. 90-618, 82 Stat. 1213. The GCA revised the NFA through Title II, which regulated machineguns, SBSs, and SBRs. Rifles and pistols not subject to the NFA were regulated under Title I of the GCA. § 18 U.S.C. § 921 *et seq.*

21.    The NFA defines a "rifle" and a "shotgun" as a "weapon designed or redesigned, made or remade, and intended to be fired from the shoulder" 26 U.S.C. §§ 5845(c), (d).

22.    Short-barreled rifles and shotguns subject to the NFA are defined as those "having a barrel or barrels of less than 16 inches in length" with respect to rifles and 18 inches in length with respect to shotguns. *Id*. at § 5845(a).

23.    The GCA defines, in pertinent part, a "handgun" as "a firearm which has a short stock and is designed to be held and fired by the use of a single hand" 18 U.S.C. § 921(a)(29). A "pistol," in ATF regulations has been

---

[1] The NFA sought to regulate handguns, SBRs, SBSs, as well as other weapons due to concealability. The handgun—the most concealable firearm of all—has since been recognized as "the quintessential self-defense weapon" and thus closest to the core of Second Amendment protection. *District of Colombia v. Heller*, 554 U.S. 570 at 629 (2008). That the Government here so aggressively fights to criminalize what it considered at the time of the NFA's passage to be almost as concealable as handguns does, to say the least, cause one to scratch one's head.

defined as a "weapon originally designed, made, and intended to fire a projectile [] from one or more barrels when held in one hand, and having [a] chamber[] as an integral part[] of, or permanently aligned with, the bore[]; and a short stock designed to be gripped by one hand and at an angle to and extending below the line of the bore[]." 27 C.F.R. § 479.11.

### B. Pistol Braces

24.    Stabilizing arm braces ("pistol brace(s)") are accessories installed on firearms that allow the user to stabilize the firearm with the support of the user's wrist.

25.    Pistol braces were originally developed for use by people with disabilities, and became incredibly popular with the American people.[2]

### C. The Government's Inconsistency With Regard to Pistol Braces

26.    In November of 2012, ATF determined that a pistol equipped with a pistol brace was not a "firearm" within the purview of the NFA in a private letter regarding a popular arm brace design.

---

[2] By ATF's estimation, there are between three and seven million pistol braces in the United States. 88 Fed. Reg. at 6550 (Jan. 31, 2023). The Congressional Research Service, on the other hand, places that estimate between 10 and 40 million. "Handguns, Stabilizing Braces, and Related Components," Congressional Research Service (April 19, 2021), https://bit.ly/3JuOvht.

27.    In March of 2014, ATF determined in a classification letter that, even if one fired a pistol with a brace from the shoulder, it would not change the classification of the pistol under federal law.

28.    In January of 2015, ATF reversed its position and issued an "Open Letter on the Redesign of 'Stabilizing Braces'", which stated that the use of a pistol brace, as designed, would not subject a firearm to NFA treatment, but that "use" of a pistol brace as a shoulder stock would constitute a "redesign" of the firearm to which it was attached, thereby without any physical change by the end user, resulting in it becoming an SBR for NFA purposes.

29.    Following the 2015 open letter, ATF issued a series of private classification letters stating that "incidental, sporadic, or situational 'use'" of a pistol brace for shouldering would not subject the firearm to the NFA.

30.    In a 2017 letter to SB Tactical, a manufacturer of pistol braces and other firearm accessories, ATF explained that "to the extent the January 2015 Open Letter implied or has been construed to hold that the incidental, sporadic, or situational "use" of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder was sufficient to constitute "redesign," such interpretations **are incorrect and not consistent with ATF's interpretation of the statute or the manner in which it has historically been enforced**." (emphasis added).

31.    On June 10, 2021, ATF published a notice of proposed rulemaking proposing to amend the regulatory definition of the term "rifle" to "clarify" at what point the attachment of a stabilizing brace would transform a "pistol" into a "rifle." *Factoring Criteria for Firearms with Attached 'Stabilizing Braces'* (hereinafter the "Proposed Rule"), 86 Fed. Reg. 30,826 (June 10, 2021).

32.    The Proposed Rule listed factors and proposed worksheet for determining whether a firearm was a pistol or SBR, which listed *some* objective criteria for evaluating where a firearm stands, although many factors were vague.

33.    The Final Rule, published to the Federal Register January 31, 2023, which lies at the core of the instant action, dispensed with the worksheet and any objective criteria, replacing the entire inquiry for whether a common firearm was a "pistol", which is presumably constitutionally protected, and an SBR, which would subject the user to prohibitory registration, tax, and possessory requirements. The inquiry under the final rule is simply whether the Government thinks the "objective design criteria and other factors" renders the firearm's possession presumably protected or presumably felonious. 88 Fed. Reg. 6,478 (Jan 31, 2023). Essentially jettisoning the Proposed Rule's factoring criteria in favor of an "I know it when I see it" approach.[3]

---

[3] This is far from a "clarifying" action. *Cf. Miller v. California*, 413 U.S. 15 (1973).

## IV.   THE FINAL RULE'S IMPACT ON PLAINTIFFS

34.   The Final Rule causes Plaintiffs concrete injuries. The rule affects all Americans who own pistols equipped with pistol braces and those who might use them in the future. *See id.* at 282.

35.   Plaintiffs Colon, Kling, Martin, and Mele own firearms that ATF contends are regulable as SBRs under the Final Rule.

36.   Plaintiff 2nd Amendment Armory has firearms in its inventory that ATF contends to be regulable as SBRs under the Final Rule.

37.   Plaintiffs Colon, Kling, Martin, and Mele depend on their affected firearms for lawful purposes of self-defense, target shooting, and other activities.

38.   Plaintiffs Colon, Kling, Martin, and Mele would be proscribed from traveling interstate with the firearms they depend on without first obtaining permission from the federal government.

39.   Plaintiffs Colon, Kling, Martin, and Mele desire to continue using their lawfully acquired firearms for lawful purposes such as self-defense without being subjected to the arbitrary registration and reporting provisions of the NFA and GCA that presently attend SBRs.

40.   Plaintiffs, even if they desired to register their firearms (which they do not), would be imperiled with criminal consequences should the FBI fail to complete their background check within 88 days of ATF's opening of a

11

background check on registering firearm—which they lawfully acquired and own—as an SBR. Should this non-approval happen beyond the 120 day discretionary period offered by ATF and Plaintiffs still possess their lawfully acquired firearm—which ATF now suddenly considers an SBR—they would be subject to criminal consequences and faced with an untenable choice.

41.    Plaintiff 2nd Amendment Armory faces the loss of the value and ability to sell the firearms it lawfully acquired, relying on the guidance of the very agency here at issue.

42.    But for the Final Rule, Plaintiffs would be able to continue to peaceably own, use, dispose of, and possess their lawfully acquired firearms. Accordingly, the actions of Defendants are a direct cause of injury to Plaintiffs.

## V.    FACTS COMMON TO ALL CLAIMS

43.    Congress is the only branch of government able to write new laws. U.S. Const. Art. I, § 1.

44.    The APA permits limited enabling regulation, but not changes in law or "gap-filling."

45.    The Final Rule, without notice and comment, entirely abandoned the fundamental claims of the Proposed Rule, is inconsistent with the underlying law, is arbitrary and capricious, and spits in the face of the rule of lenity.

12

46.     Published alongside the Final Rule, a list of "Commercially Available Firearms equipped with a 'stabilizing brace' that are short-barreled rifles", and a list of "Common weapon platforms with attached 'stabilizing brace' designs that are short-barreled rifles", encompass the vast and sweeping majority of firearms with equipped pistol braces nationwide. ATF, "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'", https://bit.ly/3HM3CSv.

47.     The Final Rule impermissibly redefines "rifle," "short-barreled rifle" and "firearm," all terms which are already substantially defined in statute. *See* 18 U.S.C. § 921(a)(7), (8); 26 U.S.C. § 5845(a)(3), (4).

48.     The Final Rule purports to take into account the actions of third parties, which may be entirely unknown to the end user, in determining whether a particular firearm is subject to the NFA, such as use by unknown persons in the firearms community or in marketing materials. *See*, *e.g.*, Final Rule at 6,512, 52.

49.     Firearms subject to the NFA are subject to burdensome restrictions unlike other common firearms, including the need to request permission from the federal government in order to travel interstate with the firearm.

50.     It can take months for the government to respond to a request for permission to travel interstate with an NFA firearm.

51.     Anyone who violates any of the litany of restrictions on the possession, transportation, and alienation of SBRs is subject to substantial monetary fines and up to ten years imprisonment. 26 U.S.C. § 5871.

52.     Firearms registered pursuant to the NFA require the payment of a $200 transfer tax and the submission of an ATF Form 4 through a licensed special occupational taxpayer. The transfer of an NFA firearm from an unlicensed individual to another unlicensed individual requires the item first be transferred on a Form 4 to a special occupational taxpayer, then another Form 4 from the special occupational taxpayer to the end user. Each Form 4 transfer can take more than 1 year and the payment of a $200 tax. Meaning to alienate a pistol affected by this Final Rule in the State of Florida, rather than a simple transfer between eligible owners, would require years of waiting and hundreds of dollars spent.

53.     ATF, in issuing its Final Rule, faced gun owners with the untenable choice between registering the firearm—thus subjecting it to severe restrictions and making it practically inalienable, removing their lawfully owned pistol brace and destroying it—as the government opines that simply removing the brace may still subject the possessor to an NFA violation if owned at the same time as a firearm it could potentially be attached to, destroying the firearm, or turning it in to ATF. None of these options are terribly attractive to Plaintiffs.

14

## VI.   COUNT I: VIOLATION OF THE RIGHT TO KEEP AND BEAR ARMS

54.   Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

55.   The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.

56.   The Supreme Court has held that the Second Amendment protects an individual right to possess firearms—especially concealable firearms like pistols. *See District of Colombia v. Heller*, 554 U.S. 570 (2008).

57.   Pistol braces are commonly owned firearm accessories that firearms are commonly sold with for lawful purposes including self-defense.

58.   In addition to the Second Amendment claim itself, the APA independently requires the Court to "hold unlawful and set aside agency action, findings and conclusions" that are found to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

59.   *Bruen* held as unconstitutional New York's 1911 Sullivan Act, requiring a license and demonstration of "proper cause" for the possession and carrying of a concealable firearm. *Bruen*, 597 U.S. __ at *2.

60.   *Bruen* identified the Court of Appeals' "coalesce[ing] around a 'two-step' framework for analyzing Second Amendment challenges that combines

history with means-ends scrutiny", the Court correctly identified this as "one step too many[.]" *Id*. *9-10.

61.    To summarize *Bruen*: any law, regulation, or government policy affecting the "right of the people to keep and bear arms," U.S. Const., Amend. II, can **only** be constitutional if the Government demonstrates analogous restrictions deeply rooted in American history evinced by historical materials contemporaneous with the adoption of the Bill of Rights in 1791. *Bruen*, 597 U.S. at *29.

62.    No federal regulation of firearms existed before the 1934 enactment of the main laws here at issue.

63.    There is no historical basis, and no historical law analogous to the attachment of felony treatment to firearms by barrel length.

64.    There is no historical basis, and no historical law analogous to the attachment of felony treatment to firearms by the presence of an accessory to facilitate easier, more accurate use of the firearm, as a pistol brace or stock does.

65.    There is no historical basis, and no historical law analogous to the attachment of felony consequences for traveling interstate with a firearm without bureaucratic permission.

66.    The government's unlawful conduct here presents a case of Schrodinger's gun: is it a pistol, and thus protected, or it is an SBR which is in

common lawful use and thus cannot be so intensely regulated. Plaintiffs submit that a firearm cannot, consistent with the Second Amendment, be both in common lawful use—as firearms with pistol braces are—and also subject to NFA treatment, which ATF admits is prohibitive.

67.     Defendants violated the Second Amendment by subjecting Plaintiffs to an unconstitutional abridgment of their rights to keep and bear arms. By ignoring the requirements of the APA, Defendants' Final Rule impermissibly attempted to amend the GCA and NFA to regulate firearms far beyond the scope of that intended by Congress.

68.     Defendants violated the Second Amendment by subjecting Plaintiffs to an unconstitutional abridgment of their rights to keep and bear arms. By giving force to an irrational regulatory scheme which threatens to imprison Americans by virtue of the length of a firearm component part, requiring the destruction, surrender, or other unfavorable treatment, the enforcement of 26 U.S.C. § 5861 in this manner violates the fundamental rights of Plaintiffs.

## VII.   COUNT II: THE GOVERNMENT HAS EXCEEDED THE LIMITS OF THE TAX AND SPEND CLAUSE

69.     Plaintiffs re-incorporate and re-allege all of the preceding paragraphs as if fully set forth herein.

70.     The NFA was brought as a tax and passed under the taxing power.

71.    "Congress cannot punish felonies generally." *Cohens v. State of Virginia*, 19 U.S. 264, 428 (1821). Accordingly, every criminal penalty it enacts "must have some relation to the execution of a power of Congress" (*Bond v. U.S.*, 572 U.S. 844, 844, 134 S. Ct. 2077, 2083 (2014)), like the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States," so long as they are "uniform throughout the United States." U.S. Const., Art. I, § 8, cl. 1.

72.    A law which does not attach consequences "beyond requiring a payment to the IRS" is a penalty—not a tax. *Id.* at 567-68.

73.    Individuals who possess an NFA firearm, which they did not believe to be an NFA firearm when it came into their possession, have no option to pay a tax, as the making or transferring of an NFA firearm requires tax payment *before* its transfer or manufacture, with incurable criminal consequences attaching to the possession.

74.    ATF's purported exercise of "discretion" in the Final Rule does not cure this defect in the law. In fact, by forgoing tax collection in the Final Rule, ATF is *violating* the law in an attempt to salvage it. *See* 26 U.S.C. §5811 ("There **shall** be **levied, collected, and paid** on firearms transferred a tax at the rate of $200 for each firearm transferred[.])

75.    In addition, for a tax to be a constitutional exercise of the taxing power, it must have a revenue-raising purpose. *See Nat'l Fed'n of Indep. Bus.*

*v. Sebelius*, 567 U.S. 519, 564 (2012) ("This process yields the essential feature of any tax: It produces at least some revenue for the Government.")

76.    The NFA's taxing requirement was passed with a prohibitory purpose, has not been revenue-positive for the government, and as it applies to the firearms here at issue, cannot be, as it is *waiving the payment of the purported tax.*

## VIII.  COUNT III: THE FINAL RULE VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

77.    Plaintiffs re-incorporate and re-allege the preceding paragraphs as if fully set forth herein.

### A. Inconsistency With The Relevant Statutes

78.    "The reviewing court shall . . . hold unlawful and set aside agency action . . . fount to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right". 5 U.S.C. §706(2)(c).

79.    Because ATF's authority is derived from the statutes it administers, it cannot act in a manner inconsistent with the statute. *See West Virginia v. EPA*, 142 S.Ct. 2587, 2609 (2022) (Noting that "enabling legislation is generally not an open book" to which the government can "add pages and change the plot line.").

80.    The relevant terms here are defined in both the NFA and GCA. ATF's attempt to re-define them very literally adds pages and changes the plot line. *See id.*

81.    The Final Rule amends the regulatory definition of "rifle" to force it to include "a weapon that is equipped with an accessory, component, or other rearward attachment" that would indicate—in an unknown way—to the government that "the weapon is designed, made, and intended to be fired from the shoulder." Final Rule at 6,480.

82.    The Final Rule impermissibly expands the definition of "rifle" to make it incompatible with the previously exclusive treatment the statute established.

**B. Failure to Follow Procedure**

83.    Additionally, 5 U.S.C. §706(2)(D) provides that this Court shall "hold unlawful and set aside" an action that is "without observance of procedure required by law."

84.    The APA requires that administrative agencies issue a notice of proposed rulemaking and provide the opportunity to comment on the proposed rulemaking. 5 U.S.C. §533(b).

85.    The extent to which agencies can make changes to a proposed rule in the final rule is a developing area of law, but the final rule "must be a logical

outgrowth of the rule proposed" to provide fair notice. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 at 174 (2008).

86.   The Final Rule here at issue jettisoned the entirety of objective guidance that was in the proposed rulemaking, replacing it with a malleable, uncertain balancing test of sorts, purporting to assess "objective design criteria," such as length of pull, with no goalposts or guidelines therefore.

87.   In addition, the Proposed Rule provided several examples of popular firearms equipped with stabilizing braces that would not constitute SBRs. The Final Rule lists only firearms that are SBRs, some of which are configured exactly as those ATF indicated were not SBRs in the Proposed Rule.

88.   In short, the Final Rule effectively works a global treatment of braced pistols as SBRs, entirely inconsistently with the Proposed Rule, without providing an opportunity for notice and comment as required by the APA.

## C. Arbitrary, Capricious, and Contrary to Law

89.   The Court shall hold unlawful and set aside any agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A).

90.   As explained *supra*, the Final Rule is not only inconsistent with the supreme law of the land, but the very statute it purports to enable.

91.   Additionally, ATF failed to properly consider or respond to comments concerning the impact of major Second Amendment cases decided

since *Heller*, as it ignored the common lawful use of the affected firearms, only aggressively misinterpreting *Bruen* dicta.

92.   ATF also, in aggressively underestimated the size of the affected community, failed to consider and respond to comments considering the effects on firearms businesses and owners.

### D. Violation of Rights

93.   Agency actions inconsistent with rights, privileges, and immunities of the People must be considered unlawful and set aside. 5. U.S.C. § 706(2)(B).

94.   As explained *supra*, the Final Rule violates the fundamental right of the People to keep and bear arms.

95.   The Final Rule violates the Fifth Amendment in that it works an unconstitutional taking of property, and is unconstitutionally vague.

96.   The Final Rule recommends the destruction of personal property dozens of times, and is bereft of objective criteria such that an individual can comprehend whether the possession of a firearm is lawful or felonious.

### IX.   PRAYER FOR RELIEF

97.   Plaintiffs pray this Honorable Court grant the following relief:

   a.   Declaratory relief holding the statutes at issue unconstitutional as they apply to common arms by reference to barrel length.

b.  Declaratory relief holding the National Firearms Act an unconstitutional exercise of the Tax and Spend Clause.

c.  In the alternative, issue a preliminary and permanent injunction preventing Defendants from enforcing the National Firearms Act against common arms by reference to barrel length.

d.  In the alternative, this court set aside the Final Rule as unlawful, and/or vacatur of the Final Rule.

e.  Awarding Plaintiffs such other legal and equitable relief as is just and proper under the circumstances; and

f.  Award Plaintiffs their attorney fees and costs under 28 U.S.C. § 2412, 5 U.S.C. § 504, or other relevant laws.

Respectfully Submitted,

DATED:  February 1, 2023

_____
Matthew Larosiere, Esq.
Zermay-Larosiere
1762 Windward Way
Sanibel, FL 33957
Email: info@zermaylaw.com
Telephone: 305-767-3529
*Lead Counsel for Plaintiffs*

_____
Zachary Z. Zermay, Esq.
Zermay-Larosiere
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 305-767-3529
*Counsel for Plaintiffs*