UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case №: 8:23-cv-00223-MSS-MRM

JOSIAH COLON; BRANDON KLING;
ERIC MELE; WILLIAM MARTIN;
and 2ND AMENDMENT ARMORY,
 a Florida profit corporation,

*Plaintiffs*,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, STEVEN
DETTELBACH, in his official capacity as
Director of the Bureau of Alcohol, Tobacco,
Firearms, and Explosives, UNITED STATES
DEPARTMENT OF JUSTICE, and
MERRICK B. GARLAND, in his official
capacity as Attorney General, U.S.
Department of Justice,

*Defendants*.

_____/

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs request a preliminary injunction, and humbly move for this honorable Court to enjoin Defendants from enforcing "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" (hereinafter "the Final Rule"), the rule promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") on January 31, 2023. 2021R-08F, 88 Fed. Reg. 6478 (Jan. 31, 2023).

1

## I.     INTRODUCTION AND LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The APA authorizes judicial review of "agency action" taken in violation of law. 5 U.S.C. §§ 706(2)(A)–(D). "Agency action" includes rule making. 5 U.S.C. § 501(13).

The Final Rule purported to re-classify at least 3 million[1] firearms that, prior to the rule, were lawfully sold, purchased, and possessed across the United States. By that regulatory fiat, and without any Congressional action, Defendants prohibited Plaintiffs, and millions of other Americans, from traveling with, alienating, and ultimately even possessing those firearms which they had lawfully dealt with for decades. Moreover, Defendants demand

---

[1] By ATF's estimation, there are between three and seven million pistol braces in the United States. 88 Fed. Reg. at 6550 (Jan. 31, 2023). The Congressional Research Service, on the other hand, places that estimate between 10 and 40 million. "Handguns, Stabilizing Braces, and Related Components," Congressional Research Service (April 19, 2021), https://bit.ly/3JuOvht.

that Plaintiffs—under threat of decades in prison and hundreds of thousands of dollars in fines—either destroy their lawfully possessed property or comply with the burdensome registration and reporting requirements of the National Firearms Act (hereinafter "NFA").

As will be thoroughly explained *infra*, Defendant's threatened conduct is incredibly severe, would result in irreparable harm to Plaintiffs if not enjoined, and Plaintiffs are likely to succeed on the merits of this action. Put very succinctly: enjoining Defendants' unlawful conduct is the only way to preserve a decades-long status quo based on reasonable reliance, to prevent severe arbitrary enforcement of a novel and aggressive regulatory interpretation that poses exclusively felonious consequences, and prevent the destruction of an unknowably large monetary value of lawfully held, Constitutionally protected firearms and accessories.

Plaintiffs recognize that preliminary relief is extraordinary, but the case at bar—and the government's extraordinary administrative overreach—presents the exact circumstances which warrant such relief, as has already been recognized by the Fifth Circuit. In other circuits, lawsuits challenging the Final Rule have lodged motions for preliminary injunctions, and relief has been granted in one thus far. *Mock v. Garland*, No. 23-10319, Doc. 52-2 (5th Cir. May 23, 2023) (order granting Appellants' Opposed Motion for a Preliminary

Injunction Pending Appeal after the district court for the Northern District of Texas had denied the initial motion).

It is further essential that "we are mindful that the Supreme Court recently cautioned against federal criminal statutes being read too expansively." *United States v. David McLean*, No. 14-10061 (11th Cir. Sept. 24, 2015) (citing *Yates v. United States*, 135 S. Ct. 1074 (2015) (concluding the term "tangible object" within the Sarbanes-Oxley Act not to apply to an undersized red grouper thrown overboard by a commercial fishing vessel's captain) in upholding a judgment of acquittal). This case presents a similar issue to the ones discussed in *Yates* and *McLean*: an aggressive, novel application of a federal criminal statute.

Non-registration is not a simple choice for Plaintiffs, either. Defendants have been intensely unclear as to how to avoid the criminal consequences of non-registration. Defendant ATF stated in the Final Rule that it is not simply enough to remove the brace, but that it must be either destroyed or the firearm modified to be incompatible with the stabilizing brace. This, of course, with no guidance as to what modifications are sufficient. Defendant Dettelbach, in Congressional testimony, stated that simply removing the brace was enough. Defendants have taken further divergent positions in other litigation across the country, so divergent that counsel for Plaintiffs are entirely unsure which

divergent path—or perhaps paths—to expect in the government's reply. This level of inconsistency underlines the lenity concerns outlined in our complaint.

In light of the extreme concerns posed by Defendants unlawful actions, preliminary relief is not just appropriate—it is essential.

## ARGUMENT
### I. Plaintiffs Are Likely to Succeed on the Merits
#### a. Defendants Violated Plaintiffs' Right to Keep and Bear Arms

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S. Ct. 2111, 2132 (2022). When the Amendment's plain text covers an individual's conduct, the Constitution **presumptively** protects it. *Id.* at 2129–30. "The government must ***then*** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. ***Only then*** may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2130 (emphasis added). Defendants cannot plausibly justify the Final Rule under *Bruen*'s analytical framework. The Rule identifies no founding-era precedent of regulating weapons based on barrel length—much less regulating handguns more stringently because the possessor dared to attach an accessory that would enhance its accuracy and utility.

5

To summarize *Bruen*: any law, regulation, or government policy affecting the "right of the people to keep and bear arms," U.S. Const., Amend. II, can **only** be constitutional if the Government demonstrates analogous restrictions deeply rooted in American history evinced by historical materials contemporaneous with the adoption of the Bill of Rights in 1791. Bruen, 597 U.S. at *29. Plaintiffs are likely to succeed on this claim for the simple reason that the government's regulation is literally unsupportable. Plaintiffs anticipate that the government may attempt to wriggle away from the burden mandated by *Bruen* by attempting to argue that it is not regulating arms, but rather accessories. This is inconsistent with Defendants' own position taken in the Final Rule, which clearly recognizes that the enabling statute *only* allows it to regulate firearms.

The meat and potatoes are simple: Not only is there no historical basis for the regulation, and no historical law analogous to the attachment of felonious consequences to firearms by barrel length, but no federal regulation of firearms existed before the 1934 enactment of the main laws here at issue. While we didn't yet have the pleasure of Alaska or Hawaii, 1934 is about a hundred-and-some-odd years late for an applicable historical analogue.

### b. The Government Has Exceeded the Limits of the Tax and Spend Clause

Plaintiffs are likely to succeed on Count II. The Final Rule is not an exercise of the taxing power because it does not actually collect any tax. Thus, it is unjustified under—and even contrary to—the NFA. "Congress cannot punish felonies generally." *Cohens v. State of Virginia*, 19 U.S. 264, 428 (1821). Accordingly, every criminal penalty it enacts "must have some relation to the execution of a power of Congress" (*Bond v. U.S.*, 572 U.S. 844, 844, 134 S. Ct. 2077, 2083 (2014)), like the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States," so long as they are "uniform throughout the United States." U.S. Const., Art. I, § 8, cl. 1. The NFA is purportedly an exercise of the taxing power, which includes the power to assess and collect taxes and associated requirements such as "requir[ing] the submission of tax-related information that [the IRS] believes helpful in assessing and collecting taxes." *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1586–87 (2021). But the Final Rule's requirement, however, that gun owners apply for permission to keep their handguns with stabilizing braces, or else discard them or turn them in to ATF, is not an exercise of the taxing power, because "Congress cannot change whether an exaction is a tax or a penalty for constitutional purposes simply by describing it as one or the other. Congress may not, for example, expand its

power under the Taxing Clause, or escape the Double Jeopardy Clause's constraint on criminal sanctions, by labeling a severe financial punishment a 'tax.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012).

A law which does not attach consequences "beyond requiring a payment to the IRS" is a penalty—not a tax. Id. at 567-68. Individuals who possess an NFA firearm, which they did not believe to be an NFA firearm when it came into their possession, have no option to pay a tax, as the making or transferring of an NFA firearm requires tax payment before its transfer or manufacture, with incurable criminal consequences attaching to the possession. The requirement to ask for permission to possess an SBR (or else suffer severe criminal penalties) is not a permissible exercise of taxing power because failure to obtain permission results in a criminal "penalty"—potential imprisonment—and not a mere collection of revenue. *Cf. e.g.*, *NFIB*, 567 U.S. at 566 (the Affordable Care Act's individual mandate was permissible exercise of taxing power because IRS was "not allowed to use those means most suggestive of a punitive sanction, such as criminal prosecution").

Assessing a fine on those who fail to pay is one thing. That might resemble the Affordable Care Act's individual mandate. But it is quite another thing to require persons to seek permission to register their weapons—regardless of their willingness to pay a tax—and then slap criminal penalties on persons who fail to obtain the permission even though they may very well

8

be willing to pay the requisite tax. That is not an exercise of taxing power, and thus the Final Rule must be set aside as "contrary to constitutional … power" under 5 U.S.C. § 706(2)(B).

### c. The Final Rule Violates the Administrative Procedure Act

Plaintiffs are likely to succeed on Count III because the Final Rule is inconsistent with the relevant statutes, failed to follow procedure, is arbitrary, capricious, and contrary to law, violates the rights of Americans, and is not a logical outgrowth of the initial proposed rule.

"The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right". 5 U.S.C. §706(2)(c). 79. Because ATF's authority is derived from the statutes it administers, it cannot act in a manner inconsistent with the statute. *See West Virginia v. EPA*, 142 S.Ct. 2587, 2609 (2022) (Noting that "enabling legislation is generally not an open book" to which the government can "add pages and change the plot line" as it attempted here). The relevant terms here are defined in both the NFA and GCA. ATF's attempt to re-define them very literally adds pages and changes the plot line. *See id*.

The Final Rule amends the regulatory definition of "rifle" to force it to include "a weapon that is equipped with an accessory, component, or other rearward attachment" that would indicate—in an unknown way—to the government that "the weapon is designed, made, and intended to be fired from

9

the shoulder." Final Rule at 6,480. The Final Rule impermissibly expands the definition of "rifle" to make it incompatible with the previously exclusive treatment the statute established.

Additionally, 5 U.S.C. §706(2)(D) provides that this Court shall "hold unlawful and set aside" an action that is "without observance of procedure required by law." The Final Rule here at issue jettisoned the entirety of objective guidance that was in the proposed rulemaking, replacing it with a malleable, uncertain balancing test of sorts, purporting to assess "objective design criteria," such as length of pull, with no goalposts or guidelines therefore.

In so far as the Final Rule's arbitrariness, the Court shall hold unlawful and set aside any agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A).

Not only is the Final Rule inconsistent with the Constitution, it is inconsistent with the very statute it purports to enable. Furthermore, ATF failed to properly consider or respond to comments concerning the impact of major Second Amendment cases decided post-*Heller*, as it ignored the common lawful use of the affected firearms, paying only lip service to a single scintilla of *Bruen* dicta.

Notice under the APA "suffices if [a final rule] is a 'logical outgrowth' of the proposed rule, meaning the notice must adequately frame the subjects for

10

discussion such that the affected party should have anticipated" the agency's final rule from the notice of proposed rulemaking. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 447 (5th Cir. 2021). "[A] final rule fails the logical outgrowth test and thus violates the APA's notice requirement where interested parties would have had to divine [the agency's] unspoken thoughts, because the final rule was surprisingly distant from the proposed rule." *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1080 (D.C. Cir. 2009) (cleaned up). That, in exact point of fact, is what happened here.

The Final Rule's definition of "rifle" is not a logical outgrowth of the NPRM's definition. The NPRM proposed an "ATF Worksheet 4999" that used a three-part points system to classify a firearm as either a handgun or a rifle. 86 Fed. Reg. at 30841-42. Yet the Final Rule entirely discards Worksheet 4999, replacing it with a vague six-part test discussed *supra*. This test was never suggested in the NPRM and is entirely impossible to implement. 88 Fed. Reg. at 6569-70. This is a wholesale change in methodology that a commenter on the NPRM could not have foreseen, and is in no way a "logical outgrowth" thereof. In fact, the approaches in the Final Rule and the NPRM yield conflicting results, which the Final Rule does not acknowledge, much less justify. As one example, under Worksheet 4999 in the Final Rule, a firearm would score "4" points and be considered a SBR if it had a "length of pull" over 13.5 inches, without any other considerations. 86 Fed. Reg. at 30842. Yet under

11

the Final Rule, length of pull merely, "in combination with other features – could indicate" an SBR. 88 Fed. Reg. at 6534. And as ATF explains, one style of firearm may permissibly have a longer length of pull than another style of firearm. *Id*. at 6535 (compared to the NPRM, which imposed the same length of pull measurements across-the-board). The Final Rule does not acknowledge, much less justify, these conflicting results.

ATF admits that "the proposed Worksheet 4999, including the points assigned to each criterion … was intended to ensure uniform consideration and application [but] did not achieve these intended purposes." 88 Fed. Reg. at 6510. But rather than, as required by the APA, provide notice of and seek comment on the new guidelines that replace the proposed worksheet and point system, ATF simply jettisoned any attempt at making the test objective, substituting it with an un-implementable mire of its own unstated, unpromulgated opinion that firearms dealers, manufacturers, and owners like Plaintiffs would be imperiled with divining.

In sum, the Final Rule represents a complete and total divergence that those commenting on the NPRM could not have predicted. It is in no way a "logical outgrowth" from the NPRM. By "promulgating a requirement that is different in kind than the proposed requirement, the Government did not adequately frame the subjects for discussion" and violated the logical-outgrowth requirement. *Mexican Gulf Fishing Co. v. United States Dep't of*

*Commerce*, No. 22-30105, 2023 WL 2182268, at *13 (5th Cir. Feb. 23, 2023). The Final Rule therefore should be set aside, having been adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## II. Plaintiffs are Suffering Irreparable Harm

As explained *supra*, in the Introduction, Plaintiffs face the threat of criminal prosecution, felony arrest, imprisonment, and accompanying irreparable loss of their civil rights by the untenable "choice" to either destroy their lawfully possessed, constitutionally protected property, or submit to an intense and burdensome regime with consequences that cannot be undone.

To show irreparable injury, Plaintiffs need not demonstrate that harm is inevitable and irreparable. *Humana, Inc. v. Avram A. Jacobson*, M.D., P.A., 804 F.2d 1390, 1394 (5th Cir. 1986). Rather, they "need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Id*.

The Final Rule threatens Plaintiff Second Amendment Armory's business, forcing it to either risk criminal consequences or the loss of its license—and thereby its livelihood—or to make choices that cannot be undone, including the destruction of valuable inventory. Plaintiffs Colon, Kling, Martin, and Mele face untenable choices as well. If these individual Plaintiffs submit to NFA treatment of their firearms, they lose the alienability of their firearms and the ability to depend on these firearms for personal protection

13

while traveling interstate without first getting the permission of Defendants each time they cross a state line. While Defendants may argue that these firearms could be removed from NFA treatment in the future, Plaintiffs still cannot un-disclose their personal information to Defendants, nor can Plaintiffs un-disclose this same information to the local law enforcement agencies Defendants require it be disclosed to. It bears emphasis that a national registry on common firearms is specifically unlawful. *See* 18 U.S.C. § 926 ("No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established.") While the law allows the registration of NFA firearms, Congress *specifically* forbade Defendants from engaging in activity to collect information amounting to a registry on common firearms and their owners because of the unique and irreparable harms that attend registries of firearms and their owners. That Defendants are attempting to create a database of these common arms is itself constitutionally and otherwise legally suspect, the simple fact is that, even if the firearms are removed from the registry at some point, that cat simply cannot return to its proverbial bag.

14

Individual Plaintiffs, should they choose registration, would also have to pass an additional background check, submit even more acute personal information in the form of fingerprints, passport photographs, and more, and be subject to still more limitations on how their firearms could be transported, stored, bought, or sold. Not to mention that individual Plaintiffs would suddenly risk felonious consequences should they allow their wives or beloved friends to borrow one of these firearms.

The fact that the Final Rule technically presents an (untenable) choice does not cure its unconstitutionality. As the Fifth Circuit observed in *BST Holdings v. OSHA*, "the loss of constitutional freedoms 'for even minimal periods of time ... unquestionably constitutes irreparable injury.'" 17 F.4th 604, 618 (5th Cir. 2021) (burden on liberty interests posed by vaccination mandate was irreparable harm) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The vaccination mandate in *BST Holdings* "threaten[ed] to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)." *Id*. Here, the Final Rule imposes a similarly untenable choice, forcing individuals to choose between destroying their property or facing threat of a potentially life-destroying prosecution.

### III. The Balance of Equity and Public Interest Favor Plaintiffs

The state of administrative law—especially where criminal consequences attach—is an extremely important question that is manifestly

15

important to the courts and has intense potential dangers for Americans. When the government is a party, the balance-of-equities and public-interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A court therefore must weigh whether "the threatened injury outweighs any harm that may result from the injunction to the non-movant" and whether "the injunction will not undermine the public interest." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051, 1056 (5th Cir. 1997). There is absolutely no harm to Defendants from pausing enforcement of the Final Rule and maintaining the status quo. While the Final Rule claims to "enhance[] public safety," 88 Fed. Reg. at 6481, Defendants point to only two brace-equipped firearms (out of millions) that have been criminally misused, *see* 88 Fed. Reg. at 6495. Even then, there is no evidence that those crimes could not have been committed without the brace or with a different firearm.

Weighing against the government's unsupported talismanic invocation of public safety, are the very acute irreparable harms posed to Plaintiffs discussed *supra*. Indeed, the public is served when the law is followed, and "there is generally no public interest in the perpetuation of unlawful agency action." *Wages & White Lion Invs., LLC, v. U.S. Food & Drug Admin.*, 16 F.4th 528, 560 (5th Cir. 2021). The balance of equities and public interest weigh heavily in favor of an injunction.

### IV. <u>Plaintiffs Pray for Nationwide Relief</u>

The acute nature of the potential harms posed by Defendants, the implication of Plaintiffs' interstate travel rights, and the interstate nature of Plaintiffs' business, plus the complications and pitfalls of local injunctions against the Final Rule, supports this Court granting nationwide relief.

### CONCLUSION

For the reasons stated *supra*, this honorable Court should preliminarily enjoin Defendants from enforcing the Final Rule.

Respectfully Submitted,

DATED: May 24, 2023

_____
Matthew Larosiere, Esq.
Zermay-Larosiere
1762 Windward Way
Sanibel, FL 33957
Email: info@zermaylaw.com
Telephone: 305-767-3529
*Lead Counsel for Plaintiffs*

_____
Zachary Z. Zermay, Esq.
Zermay-Larosiere
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 305-767-3529
*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 24, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

_____
Zachary Z. Zermay, Esq.