## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSIAH COLON, *et al.*,

      *Plaintiffs*,

      v.

BUREAU OF ALCOHOL,
TOBACCO, FIREARMS, AND
EXPLOSIVES, *et al.*,

      *Defendants*.

Case No. 8:23-cv-223

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

BACKGROUND..............................................................................................................2

I.      Statutory and Regulatory Background...........................................................2

II.     The Rule ...........................................................................................................2

III.    This Lawsuit ....................................................................................................5

LEGAL STANDARDS ...................................................................................................6

ARGUMENT ..................................................................................................................6

I.      Plaintiffs are unlikely to succeed on the merits of their claims........................6

        A.      The Rule is not arbitrary or capricious in violation of the APA............7

II.     Plaintiffs will not suffer irreparable harm absent preliminary relief...............10

III.    The equities and public interest weigh against a preliminary injunction. .......16

IV.     In all events, a nationwide injunction is improper. ......................................17

CONCLUSION ...............................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) .......... 18

*C. B. by L.B. v. Bd. of Sch. Comm'rs of Mobile Cnty.*,
CIV. A. No. 07-0562-KD-M, 2007 WL 9735418 (S.D. Ala. Aug. 14, 2007) .......... 13

*DHS v. New York*,
140 S. Ct. 599 (2020) .......... 18

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .......... 12

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021), *remanded*, 846 F. App'x 88 (3d Cir. 2021) .......... 7

*Florida v. Dep't of Health & Hum. Servs.*,
19 F.4th 1271 (11th Cir. 2021) .......... 14

*Jacksonville Branch of NAACP v. City of Jacksonville*,
No. 22-13544, 2022 WL 16754389 (11th Cir. Nov. 7, 2022) .......... 14

*Louisiana v. Becerra*,
20 F.4th 260 (5th Cir. 2021) .......... 18

*Mama Bears of Forsyth Cnty. v. McCall*,
--- F. Supp. 3d ----, 2022 WL 18110246 (N.D. Ga. Nov. 16, 2022) .......... 13

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) .......... 6

*Miller v. Garland*,
---F. Supp. 3d---, 2023 WL 3692841 (E.D. Va. May 26, 2023) .......... 15

*Mock v. Garland*,
---F. Supp. 3d---, 2023 WL 2711630 (N.D. Tex. Mar. 30, 2023),
*appeal filed*, No. 23-10319 (5th Cir. Mar. 31, 2023) .......... 15

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 9

*Nat'l Shooting Sports Found., Inc. v. Jones*,
  CIV. A. No. 11-1401 (RMC), 2011 WL 3875241 (D.D.C. Sept. 2, 2011) .............14

*Ne. Fla. Chapter of Ass'n Gen. Contractors of Am. v. City of Jacksonville*,
  896 F.2d 1283 (11th Cir. 1990) ..............................................................................12

*New York State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) ................................................................................ 9, 12, 15

*Nivel Parts & Mfg. Co. v. Textron, Inc.*,
  No. 3:17-cv-146-J-32JRK, 2017 WL 1552034 (M.D. Fla. May 1, 2017) ..............10

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................... 10, 16

*Pals Grp., Inc. v. Quiskeya Trading Corp.*,
  No. 16-23905-CIV-GOODMAN, 2017 WL 532299 (S.D. Fla. Feb. 9, 2017) .......11

*Pension Benefit Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990) .................................................................................................9

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) .............................................................. 10, 11, 13

*Swain v. Junior*,
  961 F.3d 1276 (11th Cir. 2020) ............................................................................10

*Texas v. ATF*,
  No. 6:23-cv-13, 2023 WL 3763895 (S.D. Tex. May 31, 2023) ....................... 16, 17

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ..........................................................................................17

*Willard v. Baldwin Cnty. Bd. of Educ.*,
  CIV. A. No. 09-0406-KD-N, 2009 WL 10704886 (S.D. Ala. July 27, 2009) .........13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................... 6, 10, 11

*Wreal, LLC v. Amazon.com, Inc.*,
  840 F.3d 1244 (11th Cir. 2016) ...........................................................................11

**Statutes**

5 U.S.C. § 706 ...........................................................................................................7

18 U.S.C. § 921 ................................................................................. 1, 4, 8

18 U.S.C. § 926 .....................................................................................15

26 U.S.C. § 5812.....................................................................................15

26 U.S.C. § 5822.....................................................................................15

26 U.S.C. § 5841......................................................................................1

26 U.S.C. § 5845 ................................................................................ 1, 4, 8

**Regulations**

27 C.F.R. § 478.11..................................................................................2

27 C.F.R. § 479.11..................................................................................2

*Factoring Criteria for Firearms With Attached "Stabilizing Braces,"*
   86 Fed. Reg. 30,826 (June 10, 2021).................................................3

*Factoring Criteria for Firearms With Attached "Stabilizing Braces,"*
   88 Fed. Reg. 6,478 (Jan. 31, 2023) .............................................*passim*

**Other Authorities**

ATF, *Factoring Criteria for Firearms with Attached "Stabilizing Braces,"*
   https://perma.cc/MRR9-ZBJ2.............................................................5

## INTRODUCTION

For nearly a century, Congress has regulated the possession, manufacture, and sale of short-barreled rifles, weapons that it judged especially dangerous. Federal law defines the term "rifle" to mean any rifle-bored weapon that, *inter alia*, is "designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). If a "rifle" has a barrel shorter than 16 inches in length, it is a short-barreled rifle under the National Firearms Act ("NFA") and the Gun Control Act ("GCA"), 26 U.S.C. § 5841; 18 U.S.C. § 921(a)(8), and is subject to certain registration and taxation requirements, among other federal controls.

Over the last decade, firearms manufacturers have marketed devices widely referred to as "stabilizing braces" that are designed to attach to the rear end of a heavy pistol. Though stabilizing braces are frequently advertised to wrap around a shooter's forearm to assist with one-handed firing, manufacturers often design them to resemble common shoulder stocks and market them to be used to convert pistols into shoulder-fired weapons. The result has been the widespread circumvention of Congress's longstanding requirements for the manufacture and possession of short-barreled rifles.

In 2023, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") promulgated a rule, *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule"), which clarified that, consistent with the statutory text, the statutory definition of "rifle" can include, under certain circumstances, a weapon equipped with a stabilizing brace or similar device. And to provide the regulated community with necessary guidance, the Rule also outlined the

1

relevant criteria that ATF considers when determining whether a particular weapon configured with a brace device is designed, made, and intended to be fired from the shoulder, such that it constitutes a "rifle" within the meaning of the NFA and GCA.

Plaintiffs are one firearms retailer and four individuals who are each in possession of at least one brace-equipped pistol. Plaintiffs seek to preliminarily enjoin the Rule, but they fail to show any of the prerequisites to obtain that extraordinary relief. First, as set forth fully in Defendants' Motion to Dismiss, Plaintiffs are unlikely to succeed on the merits of their claims. And merits aside, Plaintiffs will not suffer irreparable harm absent preliminary relief, and the requested injunction would undermine the public interest. The Court should therefore deny Plaintiffs' motion.

## BACKGROUND

### I.    Statutory and Regulatory Background

Defendants respectfully request that Court refer to the full statutory and regulatory background set forth in their Motion to Dismiss. *See* Defs.' Partial Mot. to Dismiss at 3–11, ECF No. 22 ("MTD").

### II.    The Rule

In light of the rise of stabilizing braces and the real-world violent crimes evincing the exact harms that Congress sought to prevent when it enacted the NFA, in 2021, ATF determined that it was necessary to clarify how it evaluates the classifications of brace-equipped weapons. The agency published a notice of proposed rulemaking ("NPRM") in June 2021, proposing amendments to the regulations in 27 C.F.R. §§ 478.11 and 479.11 regarding the meaning of the term "rifle," as used in the NFA

and the GCA. *See Factoring Criteria for Firearms With Attached "Stabilizing Braces*," 86 Fed. Reg. 30,826 (June 10, 2021). The NPRM also proposed publishing the criteria that ATF evaluates when determining whether a weapon submitted for classification is designed, made, and intended to be fired from the shoulder, including weapons equipped with stabilizing braces or other similar attachments. *Id.* at 30,826. The notice elicited over 230,000 public comments. 88 Fed. Reg. at 6,497.

ATF announced the Rule on January 13, 2023, and it was published in the Federal Register on January 31, 2023, *id.* at 6,478. The Rule, which reflects careful consideration of the voluminous comments from the public, *id.* at 6,497–6,569, contains the following key provisions:

<u>*Definition of the statutory term "rifle."*</u> The Rule amended regulations issued under the NFA and the GCA that address the statutory definition of "rifle," as proposed in the NPRM. *Id.* at 6,569. The amended regulations clarify that the statutory phrase "designed, redesigned, made or remade, and intended to be fired from the shoulder" includes any weapon that is equipped with an accessory, component, or other rearward attachment (*e.g.*, a stabilizing brace) that provides surface area allowing the weapon to be fired from the shoulder, provided that other factors indicate that the weapon is designed, made, and intended to be fired from the shoulder. *Id.* The other factors—which the NPRM discussed and were the subject of public comment, *id.* at 6,511–13—are:

    (i)  whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

      (ii)  whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method) that is consistent with similarly designed rifles;

      (iii)  whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;

      (iv)  whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;

      (v)  the manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and

      (vi)  information demonstrating the likely use of the weapon in the general community.

*Id.* at 6,569–70.

    <u>*Options for persons who may possess unregistered short-barreled rifles.*</u> The Rule also outlined several options for persons currently possessing short-barreled rifles equipped with stabilizing braces, including individual possessors, Federal Firearms Licensees ("FFLs"), and certain governmental entities. *Id.* at 6,570–71. As relevant here, an individual who was an unlicensed possessor of a brace-equipped short-barreled rifle before the Rule was published had until May 31, 2023, to come into compliance with the NFA by:

      (i)  filing the necessary ATF form to register the firearm in the National Firearms Registration and Transfer Record by May 31, 2023;

      (ii)  removing the firearm from the definition of "short-barreled rifle," 26 U.S.C. § 5845(a)(3), (4); 18 U.S.C. § 921(a)(8), by either (a) removing

the short barrel and attaching a 16-inch or longer rifled barrel to the firearm, or (b) permanently removing and disposing of or altering the brace device so that it cannot be reattached to the weapon;

(iii) turning the firearm into a local ATF office; or

(iv) destroying the firearm, per ATF's published instructions.

*Id.* at 6,570.

*Tax-forbearance provisions.* Under the Rule, ATF is forbearing certain NFA tax obligations for persons who possessed short-barreled rifles equipped with stabilizing braces prior to the Rule's publication. *Id.* at 6,571. As relevant here, these individual possessors will not be subject to the $200 making tax so long as they filed the necessary ATF registration form by May 31, 2023. *Id.*

*Rescission of prior classifications.* As a final matter, given that not all prior classification letters issued by ATF reflected the correct understanding of the statutory definition of "rifle," the Rule rescinded all of ATF's prior classifications of firearms equipped with stabilizing braces. *Id.* at 6,480. These classifications are therefore no longer valid or authoritative. *Id.* at 6,569.[1]

## III.   This Lawsuit

Plaintiffs—one firearms retailer and four individuals possessing brace-equipped pistols—filed this lawsuit on February 1, 2023, claiming, *inter alia*, that the Rule is

---

[1]ATF also issued additional guidance in conjunction with the Rule's announcement, including (i) answers to frequently asked questions regarding the Rule, (ii) registration guidance, and (iii) a non-exhaustive list of commercially available firearms and common weapon platforms equipped with stabilizing braces that ATF has determined are short-barreled rifles under the NFA and the GCA. *See* ATF, *Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* https://perma.cc/MRR9-ZBJ2.

unconstitutional and otherwise violates the Administrative Procedure Act ("APA"). Compl. ¶¶ 54–96, ECF No. 1. Across the country, seven other cases challenging the Rule were filed immediately following its publication, and in all seven other cases, plaintiffs moved for preliminary relief soon thereafter. Plaintiffs, however, filed the present motion on May 24, 2023, nearly four months after filing their Complaint, and on the date the Parties agreed Defendants would file their motion to dismiss. Pls.' Mot. for Prelim. Inj., ECF No. 21 ("PI Mot."); Defs.' Consent Mot. for Extension of Time to File Resp. to Pls.' Compl., ECF No. 14; MTD.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in its favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).

## ARGUMENT

### I.    Plaintiffs are unlikely to succeed on the merits of their claims.

To avoid presenting duplicative briefing to the Court, Defendants hereby incorporate the merits arguments in their Motion to Dismiss, which bear directly on Plaintiffs' unlikely success on the merits. *Compare* PI Mot. at 5–6 (Second Amendment); *id.* at 7–9 (taxing and spending); *id.* at 9–10 (statutory authority); *id.* at

10–13 (logical outgrowth), *with* MTD at 28–39 (Second Amendment); *id.* at 39–40 (taxing and spending); *id.* at 15–24 (statutory authority); *id.* at 24–28 (logical outgrowth).[2] Defendants' Motion to Dismiss demonstrates not only that Plaintiffs have failed to show a likelihood of success on the merits of their claims (and that the motion for a preliminary injunction should therefore be denied), but that the claims should be dismissed. The one claim not directly addressed in Defendants' prior briefing is Plaintiffs' APA claim challenging the Rule as arbitrary and capricious; although the substance of that claim is largely refuted by Defendants' prior briefing, Defendants further demonstrate that Plaintiffs are unlikely to succeed as to that claim below.

### A.   The Rule is not arbitrary or capricious in violation of the APA.

Judicial review under the APA's arbitrary-and-capricious standard is highly deferential, requiring only "that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), *remanded*, 846 F. App'x 88 (3d Cir. 2021); 5 U.S.C. § 706(2). Plaintiffs contend that the Rule is arbitrary because it is inconsistent with the NFA, the Constitution, and the APA's logical outgrowth doctrine, and additionally, because ATF insufficiently responded to Second Amendment-related public comments. PI Mot. at 10–13.

Plaintiffs are wrong on each account. Defendants' prior briefing demonstrates

---

[2] Defendants do not read Plaintiffs' Motion for Preliminary Injunction to seek relief as to their Fifth Amendment vagueness or takings claims, but these claims are also addressed by Defendants' Motion to Dismiss. *See* MTD at 40–42 (vagueness); *id.* at 42–45 (takings).

at length that the Rule is a reasonable exercise of ATF's statutorily delegated authority, comports with the relevant statutory definitions, and violates neither the Constitution nor the APA's logical outgrowth doctrine. ATF has authority to interpret and clarify the statutory definition of "rifle," and the Rule properly sets forth the objective design features and other evidence ATF will consider in determining whether a brace-equipped weapon is "designed or redesigned, made or remade, and intended to be fired from the shoulder," 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). *See* MTD at 15–24. Nor does the Rule infringe Second Amendment rights: braces are not bearable arms, basic NFA registration requirements do not infringe upon the right to bear arms, short-barreled rifles are dangerous and unusual and do not enjoy Second Amendment protections, and the Rule and NFA are supported by a history and tradition of firearm regulations. *Id.* at 28–39. Moreover, binding precedent has upheld the NFA as a valid exercise of Congress's taxing power, *id.* at 39–40, the Rule is not unconstitutionally vague, *id.* at 40–42, and Plaintiffs have not sought just compensation or alleged a Fifth Amendment taking, *id.* at 42–45. Further, because the Rule is interpretive, notice and comment was not required, and in any event, the Rule is a logical outgrowth of the NPRM. *Id.* at 24–28. The 98-page Rule also reasonably explains the basis for ATF's exercise of authority and what regulated parties must do to comply with the Rule and the NFA. *See generally* 88 Fed. Reg. at 6,478–6,575.

Setting aside the substance of Plaintiffs' Second Amendment challenge, Plaintiffs perfunctorily contend that, as a procedural matter, ATF failed to adequately consider and respond to public comments raising Second Amendment concerns. PI

Mot. at 10 (arguing ATF failed to consider post-*Heller* cases and paid only "lip service to a single scintilla of *Bruen* dicta"). Not so. *See* 88 Fed. Reg. at 6,498–99, 6,548. The Rule explains ATF's position that "*Heller* and subsequent judicial decisions support the Department's view that the weapons regulated by the NFA, such as short-barreled rifles, were not historically protected by the Second Amendment and thus fall outside the scope of the Second Amendment." *Id.* at 6,548. It states that "[n]othing in the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), changes this analysis," and cites Justice Kavanaugh's concurrence "reiterating *Heller*'s finding that 'dangerous and unusual weapons' are outside of the Second Amendment's protections." *Id.* And the Rule ultimately expresses that, therefore, "[t]he Department disagrees with commenters that this regulation violates the Second Amendment." *Id.* Thus, contrary to Plaintiffs' assertions, ATF did not leave comments unaddressed, and Plaintiffs' contention that the Rule was somehow insufficiently robust on this score is legally incorrect. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 656 (1990) (agency need not "consider all potentially relevant areas of law"); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding agency action may be overturned as arbitrary and capricious if agency "entirely failed to consider an important aspect of the problem").

Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their arbitrary and capricious claim.

II.    **Plaintiffs will not suffer irreparable harm absent preliminary relief.**

Plaintiffs have also failed to show that they are likely to suffer irreparable harm.
"A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel v.
LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). Indeed, "the absence
of a substantial likelihood of irreparable injury . . . standing alone, make[s] preliminary
injunctive relief improper." *Id.* To be eligible for preliminary relief, Plaintiffs must
"demonstrate that irreparable injury is *likely* in the absence of an injunction," *Winter*,
555 U.S. at 22, and "the asserted irreparable injury must be neither remote nor
speculative, but actual and imminent," *Siegel*, 234 F.3d at 1176 (citation omitted);
*Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020) (quoting same). "[S]ome
possibility of irreparable injury" is insufficient. *Nken v. Holder*, 556 U.S. 418, 434–35
(2009) (citation omitted). Moreover, "[t]he moving party must demonstrate the threat
of irreparable harm by independent proof, or no injunction may issue." *Nivel Parts &
Mfg. Co. v. Textron, Inc.*, No. 3:17-cv-146-J-32JRK, 2017 WL 1552034, at *1 (M.D. Fla.
May 1, 2017) (citation omitted).

As an initial matter, Plaintiffs filed this action on February 1, 2023, and failed
to seek preliminary relief until May 24, 2023.[3] This nearly four-month delay in moving
for preliminary relief undermines any finding of irreparable harm. "A delay in seeking
a preliminary injunction of even only a few months . . . militates against a finding of

---

[3] This was also the deadline for Defendants' Motion to Dismiss, as ordered by the Court. *See* Order,
ECF No. 17. Plaintiffs provided no notice to Defendants that a motion for preliminary injunction
would be forthcoming on that date, or any other date.

irreparable harm" because "[a] preliminary injunction requires showing 'imminent' irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (quoting *Siegel*, 234 F.3d at 1176–77). Because "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits," Plaintiffs' "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm" here. *Id.* Indeed, courts in this circuit have "typically decline[d] to grant preliminary injunctions in the face of unexplained delays of more than two months." *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV-GOODMAN, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (citations omitted). Preliminary relief is particularly unwarranted where, as here, Plaintiffs have provided no explanation and "any justification for the delay" cannot readily be "discern[ed] from the record." *Wreal*, 840 F.3d at 1248–49.

But even aside from Plaintiffs' delay, Plaintiffs have failed to "demonstrate that irreparable injury is *likely* in the absence of an injunction" with respect to either firearms retailer Second Amendment Armory, or the individual Plaintiffs. *Winter*, 555 U.S. at 22. Defendants address each in turn.

*Second Amendment Armory*. Plaintiffs contend that the rule "threatens Plaintiff Second Amendment Armory's business, forcing it to either risk criminal consequences or the loss of its license—and thereby its livelihood—or to make choices that cannot be undone, including the destruction of valuable inventory." PI Mot. at 13. But Plaintiffs' motion fails to articulate how or why the Rule creates such risks, and such

11

conclusory and unspecified allegations are insufficient to establish irreparable harm. *Ne. Fla. Chapter of Ass'n Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990) (conclusory allegations and speculative assertions of irreparable harm insufficient to justify preliminary injunction). Plaintiffs have provided no evidence to substantiate any claim that Second Amendment Armory sells braces or brace-equipped firearms.[4] But even assuming that it does, the Rule does not prohibit the sale or require the destruction of braces or brace-equipped firearms, and instead, merely requires that sellers of such weapons choose one of five compliance options. 88 Fed. Reg. at 6,570. As explained below, this regulatory choice does not constitute irreparable injury, and further, Second Amendment Armory fails to identify any constitutional right or legal interest that may be injured by its compliance with NFA requirements. *See District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008) (imposing conditions and qualifications on commercial sale of firearms is presumptively lawful); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (affirming same). Accordingly, Second Amendment Armory has not demonstrated irreparable injury sufficient for preliminary injunctive relief.

    *Individual Plaintiffs*. Plaintiffs' assertions of irreparable harm as to individual Plaintiffs fare no better. Plaintiffs' arguments on this issue generally fall into two categories: (1) alleged constitutional violations, and (2) difficulties resulting from

---

[4] Plaintiffs' motion does not provide information regarding Second Amendment Armory's business, license, or inventory, and their Complaint only briefly alleges that Second Amendment Armory "has in its inventory pistols with attached stabilizing braces," Compl. ¶ 8, and separately "faces the loss of the value and ability to sell the firearms it lawfully acquired," *id.* ¶ 41.

12

having to comply with the NFA. As to the first point, the Rule is constitutional for the reasons set forth in Defendants' Motion to Dismiss, and Plaintiffs fail to show otherwise. Accordingly, Plaintiffs can demonstrate no irreparable injury resulting from any constitutional violation. *See also C. B. by L.B. v. Bd. of Sch. Comm'rs of Mobile Cnty.*, CIV. A. No. 07-0562-KD-M, 2007 WL 9735418, at *3 (S.D. Ala. Aug. 14, 2007) ("In the Eleventh Circuit irreparable harm is not presumed just because a constitutional violation is at issue."); *Siegel*, 234 F.3d at 1177–78.

Indeed, Plaintiffs rely heavily on their second argument, that the Final Rule poses individual Plaintiffs with an "untenable choice[]," as to compliance with the Rule, which somehow amounts to irreparable harm. PI Mot. at 13–14. It is unclear whether Plaintiffs assert that making the "choice" itself constitutes injury, or if regulatory requirements flowing from a given choice constitute irreparable harm. Regardless, both such arguments fail.

The challenge of picking one of several regulatory compliance options cannot constitute injury, irreparable or otherwise. Indeed, in the preliminary injunction context, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Mama Bears of Forsyth Cnty. v. McCall*, --- F. Supp. 3d ----, 2022 WL 18110246, at *13 (N.D. Ga. Nov. 16, 2022) (citation omitted). Plaintiffs cannot plausibly argue that their decision making as to compliance with the Rule is so subjectively difficult that it creates cognizable, irreparable injury. *See Willard v. Baldwin Cnty. Bd. of Educ.*, CIV. A. No. 09-0406-KD-N, 2009 WL 10704886, at *2 (S.D. Ala. July 27, 2009) ("A self-imposed injury does

not constitute the requisite irreparable harm.").

To the extent Plaintiffs contend that registration and other regulatory requirements imposed by the NFA constitute irreparable harm, that argument fails as well. Specifically, Plaintiffs assert that "[i]f" they choose to register their firearms, they will "lose the alienability of their firearms," and the ability to "travel[] interstate" with such firearms without first receiving approval from ATF. PI Mot. at 13–14. But Plaintiffs do not allege, let alone demonstrate, that they will register their firearms under the NFA, and then imminently seek to sell or travel interstate with them, such that any regulatory requirements on these issues will result in certain and irreparable injury. *See Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1291 (11th Cir. 2021) ("Importantly, the possibility of an irreparable injury is not enough."). Even had Plaintiffs made such allegations, claims of future delay and inconvenience are similarly insufficient to constitute irreparable harm. *See Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *4 (11th Cir. Nov. 7, 2022) (holding that claimed "inconveniences" in that case did not "amount to irreparable harm").

Nor does the provision of personal information or compliance with other registration requirements, in the context of a lawful firearm regulatory scheme, constitute injury. *See* PI Mot. at 14; *Nat'l Shooting Sports Found., Inc. v. Jones*, CIV. A. No. 11-1401 (RMC), 2011 WL 3875241, at *4 (D.D.C. Sept. 2, 2011) (holding that certain ATF recording and reporting requirements did not "rise to the level of

irreparable harm").[5] As Justice Kavanaugh explained in *Bruen*, the Second Amendment does not prohibit the use of "objective licensing requirements," like "fingerprinting, a background check, a mental health records check[.]" 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Plaintiffs fail to identify any constitutional right or legal interest that may be injured by their compliance with NFA registration procedures, such that irreparable harm is lacking.

*Related cases.* Lastly, Defendants emphasize that no court considering challenges to the Rule has provided any analysis supporting a finding that individual or businesses plaintiffs have demonstrated irreparable harm. Six district courts have issued orders on motions for preliminary injunction. The only two district courts to support their decision with reasoned analysis concluded that plaintiffs *failed* to demonstrate a likelihood of success of the merits and declined to grant preliminary relief. *See Miller v. Garland*, ---F. Supp. 3d---, 2023 WL 3692841, at *1 (E.D. Va. May 26, 2023); *Mock v. Garland*, ---F. Supp. 3d---, 2023 WL 2711630, at *1 (N.D. Tex. Mar. 30, 2023), *appeal filed*, No. 23-10319 (5th Cir. Mar. 31, 2023). The other four district court decisions relied on a Fifth Circuit motions panel's two-sentence order granting an injunction pending appeal in *Mock*, which itself provided no reasoning as to irreparable harm or any other preliminary injunction factor. *See* Unpublished Order, *Mock v. Garland*, No.

---

[5] Plaintiffs vaguely assert that the Government is improperly using the Final Rule "to create a database of . . . common arms," in violation of 18 U.S.C. § 926. PI Mot. at 14. But in the same breath, Plaintiffs concede that "the law allows the registration of NFA firearms," *id.*, all the Final Rule ensures. *See also* 26 U.S.C. §§ 5812, 5822 (requiring approval by the Attorney General for making and transferring NFA firearms).

23-10319 (5th Cir. May 23, 2023); *see also* Order, *Second Amend. Found. v. ATF*, No. 3:21-cv-116-B (N.D. Tex. May 25, 2023), ECF No. 62; Order, *Britto v. ATF*, No. 2:23-cv-19-Z (N.D. Tex. May 31, 2023), ECF No. 59; *Texas v. ATF*, No. 6:23-cv-13, 2023 WL 3763895 (S.D. Tex. May 31, 2023); Order, *Watterson v. ATF*, No. 4:23-cv-80-ALM (E.D. Tex. June 7, 2023), ECF No. 37. Thus, no previous decision provides any support for the notion that Plaintiffs before this Court have any claim to irreparable harm.

**III.   The equities and public interest weigh against a preliminary injunction.**

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Plaintiffs cite only their own alleged harms and the Rule's alleged unlawfulness in support of their assessment of the balance of the equities. *See* PI Mot. at 16. But as Defendants have explained, Plaintiffs have not demonstrated irreparable harm, and the Rule comports with ATF's statutorily delegated authority and does not violate the Constitution or the APA. Thus, these factors tilt decidedly against the issuance of a preliminary injunction here.

Moreover, the Rule's operation benefits public safety. Congress passed the NFA for the express purpose of regulating firearms, like short-barreled rifles, that it determined posed a greater risk to public safety because of their unusual and dangerous nature. 88 Fed. Reg. at 6,566. The Rule enhances public safety by clarifying and supporting the enforcement of NFA controls that Congress designed to address these

16

risks. *Id.* Plaintiffs' request to enjoin the rule would, conversely, decrease public safety by facilitating widespread circumvention of these controls. Any harm to Plaintiffs in complying with the NFA is, by comparison, minimal.

In addition, the Rule serves the public interest by providing regulated parties with greater clarity. ATF initiated the rulemaking process, in part, because the prior system of *ad hoc* classification determinations, at times, resulted in inconsistent classifications of brace-equipped pistols. The 98-page Rule, however, thoroughly explains ATF's uniform approach, and it provides that "an individual may contact ATF to receive a [classification] determination." 88 Fed. Reg. at 6,481. Thus, the public interest is better served by the Rule than by its absence.

## IV.  In all events, a nationwide injunction is improper.

Plaintiffs specifically request nationwide injunctive relief, but such relief is not warranted. *See* PI Mot. at 17. Indeed, although Defendants submit that injunctive relief is absolutely unwarranted here, even the courts determining otherwise have uniformly declined to grant nationwide relief and have instead limited relief to the plaintiffs in those cases. *See* Unpublished Order, *Mock v. Garland*, No. 23-10319 (5th Cir. May 23, 2023); Order, *Second Amend. Found. v. ATF*, No. 3:21-cv-116-B (N.D. Tex. May 25, 2023), ECF No. 62; Order, *Britto v. ATF*, No. 2:23-cv-19-Z (N.D. Tex. May 31, 2023), ECF No. 59; *Texas v. ATF*, No. 6:23-cv-13, 2023 WL 3763895 (S.D. Tex. May 31, 2023); Order, *Watterson v. ATF*, No. 4:23-cv-80-ALM (E.D. Tex. June 7, 2023), ECF No. 37.

Moreover, nationwide injunctions "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring); *see also DHS v. New York*, 140 S. Ct. 599, 599–601 (2020) (Gorsuch, J., concurring) (lamenting the "asymmetric" effects of nationwide injunctions on "the government's hope of implementing any new policy"). Further, the Rule is subject to litigation in at least seven other cases in five other federal districts,[6] underscoring why this Court should not attempt to decide its legality for all parties nationwide—particularly on a motion brought by only five Plaintiffs. *See Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (explaining that "[p]rinciples of judicial restraint" counsel against granting relief to non-parties—particularly where, as here, "[o]ther courts are considering these same issues" at the same time); *see also Arizona v. Biden*, 40 F.4th 375, 395–98 (6th Cir. 2022) (Sutton, C.J., concurring).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for preliminary relief.

Dated: June 7, 2023                    Respectfully submitted,

---

[6] *See Britto v. ATF*, No. 2:23-cv-19 (N.D. Tex.); *Firearms Regul. Accountability Coal., Inc. v. Garland*, No. 1:23-cv-24 (D.N.D.); *Miller v. Garland*, No. 1:23-cv-195 (E.D. Va.); *Second Amend. Found. v. ATF*, No. 3:21-cv-116 (N.D. Tex.); *Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex.); *Watterson v. ATF*, No. 4:23-cv-80 (E.D. Tex.); *Mock v. Garland*, No. 4:23-cv-95 (N.D. Tex.).

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Taylor Pitz*
TAYLOR PITZ (CA Bar No. 332080)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
MICHAEL DREZNER (VA Bar No. 83836)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Attorneys for Defendants*

19

## **CERTIFICATE OF SERVICE**

On June 7, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Middle District of Florida, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Taylor Pitz*
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice