UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE №: 8:23-cv-00223-MSS-MRM

JOSIAH COLON, *et al.*,

                *Plaintiffs*,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

                *Defendants*.

_____/

## PLAINTIFFS' OPPOSITION TO GOVERNMENT'S PARTIAL MOTION TO DISMISS

### INTRODUCTION AND LEGAL STANDARDS

Plaintiffs come before this honorable Court to oppose the Government's filing of May 24, 2023, which it styles as a motion to dismiss all but Plaintiffs' arbitrary and capricious claim. ECF 22. As this honorable Court knows, a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) comes with a fairly substantial burden to the movant, reserved for situations where, upon the very face of the complaint, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations". *Hishon v. King Spalding*, 467 U.S. 69, 73 (1984). 12(b)(6) is a mechanism for courts to dispense with causes on dispositive, well-settled issues of law. The 12(b)(6) motion, "operating on the assumption that the

1

factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). It is *not* an avenue for the government to evade questions of first impression, to avoid grappling with important constitutional questions, or to shirk meeting its burden in novel, aggressive, and inconsistent administrative re-interpretations of statutes with acute criminal consequences.

The complained-of conduct has sparked nationwide litigation. To wit, the government is defending against nearly identical allegations in some seven similar lawsuits, in most of which it is presently enjoined from enforcement of the rule at issue against individual and associational plaintiffs.[1] Yet, the government here suggests that, despite the well-pled allegations in the complaint, and despite being enjoined against enforcement of the rule at issue repeatedly in nearly identical lawsuits, that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the [well-pleaded] allegations" and that this honorable court must dismiss this claim.

---

[1] FRAC v. Garland, 1:23-cv-00024 (D.N.D.) (pending ruling on motion for preliminary injunction); Texas v. ATF, 6:23-cv-00013 (S.D. Tex.)(injunction as to plaintiffs granted May 31, 2023); Mock v. Garland, 4:23-cv-00095 (N.D. Tex.) (following denial at district court, appeals panel enjoining Final Rule as to plaintiffs pending expedited appeal May 23, 2023); Second Amendment Foundation v. ATF, 3:21-cv-00116 (N.D. Tex.) (injunction granted as to Plaintiffs May 25, 2023); Britto v. ATF, 2:23-cv-00019 (N.D. Tex.) (granting preliminary injunction as to Plaintiffs May 31, 2023); and Watterson v. ATF, 4:23-cv-00080 (E.D. Tex. )(injunction granted as to Plaintiffs June 7, 2023).

ECF 22 at 15 (citing, with modification *Neitzke*, 490 U.S. at 327). Plaintiffs respectfully disagree.

## ARGUMENT

### I.   The Rule Violates the APA, and the Complaint Sufficiently Alleges Violations Thereof

The government's motion argues for dismissal on contentions that the Rule at issue is a "valid exercise of ATF's statutorily delegated authority and comports with the statutory definition of 'rifle'", and that "notice and comment was not required" because the Rule at issue "is a logical outgrowth of the NPRM". ECF 22 at 15-28. While the government spends over a dozen pages on this analysis, it makes very few references to the Complaint, and sounds more in a motion for summary judgment, and it was not noticed or filed as such. Even so, many of the arguments raised by the government are pre-empted and refuted by arguments made in Plaintiffs' motion for preliminary injunction. ECF 21. To prevent unnecessary spilling of ink, Plaintiffs incorporate the arguments made in their motion for Preliminary Injunction as if fully set forth herein. Still, Plaintiffs will here refute, to the best of their ability, what can be attributed as arguments made consistent with a motion to dismiss. In so far as the government asserts that no basis for relief has been presented, Plaintiffs

very plainly demanded vacatur, setting aside, holding unlawful, as well as other relief, all contemplated by statute and existing law.

### A. Inconsistency With the Relevant Statutes

The complaint substantially explains the regulatory history, which the government's Motion to Dismiss asserts a contrary reading—especially with its categorization of short barreled rifles as particularly dangerous—without citation to legislative history. Such will be examined further *infra*, but the thrust of the Complaint here is that Defendants are impermissibly "add[ing] pages and chang[ing] the plot line" as the Supreme Court recently held unlawful in *West Virginia v. EPA*, 142 S.Ct. 2587 (2022) (Noting that "enabling legislation is generally not an open book" to which the government can "add pages and change the plot line.").

The relevant terms here in the statute refer exclusively to the design and intent of a firearm. Especially where a statute has criminal consequences, a narrow, informed reading is essential. As stated in the Complaint, the complained-of Rule attempts to amend the statutory definition of "rifle" to "force it to include 'a weapon that is equipped with an accessory, component, or other rearward attachment' that would indicate—in an unknown way—to the government that 'the weapon is designed, made, and intended to be fired from the shoulder[,]'" thereby "impermissibly expand[ing] the definition of

4

'rifle' to make it incompatible with the previously exclusive treatment the statute established." Compl. Para. 80-82.

The government is free to argue that the rule at issue is consistent with the underlying statute at trial or in a properly filed motion for summary judgment, but Plaintiffs have clearly met their burden to survive the government's 12(b)(6) motion.

### B. Failure to Follow Procedure

The government misconstrues Count IIIB of the Complaint by collapsing what are cumulative counts. The crux of the government's argument here is that notice and comment was not required, and even if it was, that the complained-of rule was a logical outgrowth of the Notice of Proposed Rulemaking. While the government is not directly invoking *Chevron*, its argument is supported chiefly by its repeated assertion that its reading—the reading this lawsuit is based on—is reasonable and consistent with the underlying statute. Plaintiffs clearly submit in the Complaint that this is not a mere interpretive rule, but a novel and aggressive expansion of the underlying statute, which violates the APA in a variety of ways.

The government, in supporting its motion to dismiss, rests on its own interpretation to carry the day. Plaintiffs submit that the government's interpretation is due little, if any weight, especially at this stage. *United States*

*v. Apel*, 571 U.S. 359, 369, 134 S. Ct. 1144, 188 L. Ed. 2d 75 (2014) (finding that the Supreme Court has "never held that the Government's reading of a criminal statute is entitled to any deference"); see also *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1155 (10th Cir. 2016) ("The Supreme Court has expressly instructed us not to apply *Chevron* deference when an agency seeks to interpret a criminal statute.") (Gorsuch, J., concurring). That is so because "criminal laws are for the courts, not for the Government, to construe." *Abramski v. United States*, 573 U.S. 169, 191, 134 S. Ct. 2259, 189 L. Ed. 2d 262 (2014). For this reason, when "the Government interprets a criminal statute too broadly . . . or too narrowly . . . a court has an obligation to correct its error." *Cargill v. Garland*, 57 F.4th 447, 466-68 (5th Cir. 2023).

An interpretive rule does not attempt to create a new law or modify existing one, as the government does here. Rather, it only provides *clarification* or *explanation*. *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434 (Fed. Cir. 1998). Interpretive rules, such as agency manuals, guidelines, and memoranda of administrative agencies generally are exempt from the notice and comment procedures of the APA because they do not carry the force and effect of law. Here, on the other hand, the government is attempting to, quite literally, *add pages* (upon pages) to the statute and impose felonious consequences upon millions of Americans by administrative fiat. A result that is far from the

heartland of interpretive rulemaking, and strikes the opposite balance of those exempt from notice and comment procedures under the APA.

"The purpose of notice under the APA is to disclose the thinking of the agency and the data relied on." *Home Box Office, Inc. v. FCC,* 185 U.S. App. D.C. 142, 567 F.2d 9, 35 (D.C.Cir.), cert. denied, 434 U.S. 829, 98 S. Ct. 111, 54 L. Ed. 2d 89 (1977). Notice is adequate if "it affords interested parties a reasonable opportunity to participate in the rulemaking process." *Hewitt v. Comm'r of IRS*, 21 F.4th 1336, 1345 (11th Cir. 2021). Here, as explained in the complaint, and echoed in the many lawsuits the government is also defending against, the final rule completely disposed of any and all objective criteria a gun owner could possibly utilize in assessing whether their particular firearm was or was not covered by the Final Rule.

Compounding the problem posed by the Final Rule dispensing with any and all objective criteria outlined in the NPRM, Plaintiffs repeat the significance of the Final Rule completely conflicting with the government's previous guidance. Because here, there were "no findings and no analysis here to justify the choice made, no indication of the basis on which the [agency] exercised its expert discretion" the government's motion is due to be denied. *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983)

7

(holding that executive agencies cannot arbitrarily revise their interpretations).

Plaintiffs contend, and adequately pled, that notice and comment *was* and *is* required, and that the final rule did, in fact, fail the logical outgrowth test. While the government circularly refers to its own interpretation, and in support thereof cites a ruling that is pending appeal, its motion to dismiss is very much due to be denied. That is not to say the government cannot make these arguments later on in litigation.

## II. Questions of Constitutionality

### a. Second Amendment Generally

The government asserts, in what is styled as a motion to dismiss, conclusory statements that the Rule and underlying statute are constitutional. In support of these allegations, the government rests on a litany of pre-*Bruen* case law which does not comport with the standard articulated by the Supreme Court. To summarize *Bruen*: any law, regulation, or government policy affecting the "right of the people to keep and bear arms," U.S. Const., Amend. II, can **only** be constitutional if the Government demonstrates <u>analogous restrictions</u> deeply rooted in American history evinced by historical materials <u>contemporaneous with the adoption of the Bill of Rights in 1791</u>. *New York State Rifle & Pistol Ass'n. v. Bruen*, 597 U.S. __ at *29 (2022).

8

While *Bruen* does not require the government identify a historical "twin", an analogue must be analogous. The government has not identified a single historically analogous law or regulation. The rule at issue imposes felonious consequences for the simple peaceable possession of or interstate travel with a firearm. In attempting to justify its motion to dismiss, the government cites modern concealed carry licensing regimes, laws regulating militiamen, regulations on the safety of barrels, and postbellum laws from the American South which were principally imposed to prevent minorities from acquiring arms. ECF 22 at 37. None of these laws, save for those in the otherwise constitutionally dubious and temporally irrelevant Jim Crowe era, imposed felonious consequences on the simple possession of arms. The laws the government cites are far from analogous in effect or intent, and do little to defeat the Second Amendment claims on a 12(b)(6) standard.

To the extent the government is attempting to escape the Second Amendment by claiming that pistol braces are not "bearable arms," the argument misses the mark spectacularly. First, the complained-of conduct, and this lawsuit, are directed at *firearms with attached stabilizing braces*, not the brace itself. The government itself, in the final rule asserts that "the rule does not itself ban or regulate any particular devices" but rather focuses on "restrictions or regulations on certain firearms." 88 Fed. Reg. 6509

9

(furthermore, the title of the final rule is "Factoring Criteria for Firearms With Attached 'Stabilizing Braces'", rather than implicating the braces themselves). To allow the government to evade Second Amendment scrutiny by claiming it is only regulating a certain "part" or "accessory," while imposing felonious consequences on possession of a firearm with that "part" or "accessory" invites the government to indulge in a "death by a thousand cuts" approach to firearms. The pre-*Bruen* decisions it cites which it purports to support this theory are similarly suspect, and do not articulate the modern standard for Second Amendment analysis.

As far as the government's invocation of "dangerous and unusual," it is citing precedent that does not exist. This is a common mis-attribution of *Heller dicta*, part of which lies at the foundation of *Bruen*'s clarity. The *Heller* court referred to the 1328 statute of Northampton, and early American invocations thereof, which restricted the "<u>carrying</u>" of "dangerous **and** unusual weapons." *District of Colombia v. Heller*, 554 U.S. 570, 625 (2008). In this reference, the Court opined that historical justifications for restrictions on the carrying of these arms, should they exist, would be explored in future litigation. *Id.* at 635. Then, *Bruen* made no such exception from the Second Amendment, rather, *Bruen* chided as inappropriate the two-step framework the government here attempts to resurrect. The simple question is whether the law or policy at issue

implicates the right to keep and bear arms. Plaintiffs submit that the threat of lengthy prison terms, restrictions on alienability, restrictions on interstate travel, and prohibitive taxing and registration regimes on the simple possession of a firearm quite manifestly implicate the Second Amendment.

All that to say, Plaintiffs have very clearly articulated a redressable claim for Defendants' violations of the Second Amendment and the motion is due to be denied.

### b. The Taxing Power

Plaintiffs very plainly articulated that the government has exceeded the limits of the tax and spend clause, and the proper relief is requested. "Congress cannot punish felonies generally." *Cohens v. State of Virginia*, 19 U.S. 264, 428 (1821). Accordingly, every criminal penalty it enacts "must have some relation to the execution of a power of Congress" (*Bond v. U.S.*, 572 U.S. 844, 844, 134 S. Ct. 2077, 2083 (2014)), like the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States," so long as they are "uniform throughout the United States." U.S. Const., Art. I, § 8, cl. 1. 75.  In addition, for a tax to be a constitutional exercise of the taxing power, it must have a revenue-raising purpose. See *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 564 (2012) ("This process yields the essential feature of any tax: It produces at least some

revenue for the Government."). A law which does not attach consequences "beyond requiring a payment to the IRS" is a penalty—not a tax. *Id.* at 567-68.

The government argues, primarily from dicta, for the dismissal of this complaint. It also relies heavily on cases discussing that the government has the power to *postpone* tax. This case is materially distinguishable from the postponement cases. Unlike in *Int'l Harvester*, the government here is *forgoing* tax, not *postponing* it. *Int'l Harvester Co. v. Wisc. Dep't of Tax'n*, 322 U.S. 435, 441 (1944). The government is free to make these arguments later in litigation, but at the instant, Plaintiffs have clearly articulated a claim for which relief—in the form of declaratory and injunctive relief—can be granted.

### c. Vagueness

Defendants argue for dismissal of vagueness issues by asserting forcefully that the rule is not vague. Given that Defendant Dettelbach completely mis-applied the rule here at issue in Congressional testimony, arguing that one must simply "remove the brace" where the Final Rule requires removal and some other unknowable "modification", it seems clear to Plaintiffs that void-for-vagueness is very much at play. 88 Fed. Reg. 6572. The simple fact here is that the rule at issue, unlike the NPRM and the status quo ante, is bereft of *any* objective criteria to put gun owners on notice as to when a firearm crosses a critical line. The only thing the government points to in its

motion to support its vagueness argument is a ruling which was appealed and as of yet reversed against the government. Plaintiffs maintain that neither Plaintiffs, nor an average gun owner can be on notice as to where the critical line the government here has muddied lies, and that is *because of* the complained-of rule.

### d. Takings

Defendants have spilled a lot of ink trying to evade scrutiny under the Taking Clause. However, Plaintiffs have pled that their unlawful conduct constitutes a regulatory taking that renders their braces valueless. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). At an absolute minimum, the government has "called upon [Plaintiffs] to sacrifice all economically beneficial uses [of their braces] in the name of the common good, that is, to leave his property economically idle, [and thus, they have] . . . suffered a taking." *Id.* at 1019. To the extent that the government contends otherwise, that is a question of fact that cannot be adjudicated by way of a motion to dismiss.

### III. Conclusion

The government's motion to dismiss should be denied.

Respectfully Submitted,

DATED: June 14, 2023

_____
Matthew Larosiere, Esq.
Zermay-Larosiere
1762 Windward Way
Sanibel, FL 33957
Email: info@zermaylaw.com
Telephone: 305-767-3529
*Lead Counsel for Plaintiffs*

_____
Zachary Z. Zermay, Esq.
Zermay-Larosiere
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 305-767-3529
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 14, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Zachary Z. Zermay, Esq.