IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOSIAH COLON, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*, <br><br> *Defendants*. | Case No. 8:23-cv-223 |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

This Court ordered Defendants to address "whether the corporate Plaintiff, 2nd Amendment Armory, has standing to assert the Second Amendment claim raised in this action." Order at 1, ECF No. 39. Defendants submit that the Court's query is best considered in two parts: (1) does this Plaintiff have standing; and (2) has this Plaintiff stated a cognizable claim under the Second Amendment. This distinction is helpful because the Article III requirements of standing—injury, causation, and redressability—are separate issues from whether a plaintiff states a claim on which relief can be granted. But both issues go to the heart of the inquiry before the Court: whether Plaintiffs have shown a likelihood of success on the merits, and thus whether a preliminary injunction may be appropriate. *See Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1281 (N.D. Fla. 2022) (explaining that the "affirmative burden of showing a

1

likelihood of success on the merits necessarily . . . depends on a likelihood that a plaintiff has standing") (citation omitted).

2nd Amendment Armory ("SAA") appears to allege two types of standing to raise its Second Amendment claims. First, SAA alleges that is has been financially injured, and argues that its own Second Amendment rights have been violated. But for-profit corporations like SAA lack Second Amendment rights. Second, SAA tries to assert third-party standing on behalf of its former customers, in order to bring a Second Amendment claim on their behalf. But SAA fails to demonstrate third-party standing, both because it failed to plead such allegations in its Complaint, and because SAA cannot claim standing on behalf of former customers who now may be affected by the Final Rule.

I. **SAA Fails to State a Second Amendment Claim on its Own Behalf.**

SAA first argues that it has standing to bring suit because it is financially injured by the Final Rule, and it thereby seeks to raise a Second Amendment claim on its own behalf. However, for-profit corporations like SAA lack Second Amendment rights.

As the Supreme Court recently held in *Bruen*, "when the Second Amendment's plain text covers an *individual's* conduct, the Constitution presumptively protects that conduct." *N.Y. State Rifle Ass'n v. Bruen*, 142 S. Ct. 2111, 2117, 2126, 2129 (2022) (emphasis added). Both before and after *Bruen*, courts have agreed that the Second Amendment right applies to individuals, rather than corporations or other business organizations. *See, e.g., Gazzola v. Hochul*, No. 122CV1134BKSDJS, 2022 WL 17485810, at *14 (N.D.N.Y. Dec. 7, 2022) (holding that corporate plaintiffs were

2

unlikely to succeed on Second Amendment claims because they could not point to "any authority supporting a Second Amendment right for an individual or a business organization to engage in the commercial sale of firearms."); *Leo Combat, LLC v. U.S. Dep't of State*, No. 15-CV-02323-NYW, 2016 WL 6436653, at *9 (D. Colo. Aug. 29, 2016) (holding that the Second Amendment protects the "*individual* right to bear arms" such that a plaintiff "does not have standing in its corporate form to assert a Second Amendment violation").

This conclusion draws further support from the fact that "[t]he Second Amendment does not encompass the right to sell firearms commercially with the principal objective to make a profit." *United States v. Kazmende*, No. 1:22-CR-236-SDG-CCB, 2023 WL 3872209, at *6 (N.D. Ga. May 17, 2023), *report and recommendation adopted,* No. 1:22-CR-00236-SDG, 2023 WL 3867792 (N.D. Ga. June 7, 2023).  The leading case in this area is *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc).  There, the en banc Ninth Circuit exhaustively examined the historical record and noted how early American "colonial governments substantially controlled the firearms trade," including through "restrictions on the commercial sale of firearms." *Id*. at 685.  The Ninth Circuit accordingly concluded that "the Second Amendment does not independently protect a proprietor's right to sell firearms." *Id.* at 690; *see also id.* at 684 ("[T]he right codified in the Second Amendment did not encompass a freestanding right to engage in firearms commerce divorced from the citizenry's ability to obtain and use guns.").

3

Courts have accordingly followed *Teixera* in holding that businesses may not claim a Second Amendment right to sell firearms for profit. *See, e.g., Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 505 n. 15 (N.D.N.Y. 2020) (agreeing with *Teixeira* and collecting cases); *United States v. Flores*, No. CR H-20-427, 2023 WL 361868, at *5 (S.D. Tex. Jan. 23, 2023) ("Defendant argues that the Second Amendment implies by logical necessity a right to commercially deal in firearms. This argument is unsupported and contrary to the holding of *Teixeira* and the dicta in *Heller*, *McDonald*, and *Bruen*." (emphasis modified)); *see also Mont. Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010), *report and recommendation adopted,* No. CV 09-147-M-DWM-JCL, 2010 WL 3909431 (D. Mont. Sept. 29, 2010) ("*Heller* said nothing about extending Second Amendment protection to firearm manufacturers or dealers.").

Accordingly, SAA cannot bring a Second Amendment claim on its own behalf, and it is therefore unlikely to succeed on such a claim.

## II.  SAA Fails to Show Standing on Behalf of Customers.

Likely recognizing the absence of an independent Second Amendment claim by SAA, Plaintiffs also attempt to claim derivative standing on behalf of former SAA customers, in order to raise a Second Amendment claim on their behalf. But this assertion is untimely, unsupported, and meritless.

SAA lacks third-party standing here for at least two reasons. First, the Complaint includes no allegations whatsoever addressing standing on behalf of former

SAA customers, precluding Plaintiffs from claiming such standing now. Second, any belated assertion of third-party standing fails to satisfy the clear prudential standing requirements imposed by the Eleventh Circuit.

### A.  Plaintiffs Failed to Plead Customer Standing in the Complaint.

Plaintiffs are required to "clearly and specifically" allege facts in their Complaint sufficient to support their standing. *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1230 (11th Cir. 2000). Accordingly, the Court is required to examine whether Plaintiffs' "[C]omplaint 'clearly alleges facts demonstrating each element" of standing. *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Here, SAA's Complaint fails to allege any "clear and specific" facts as to customer injury, let alone allege legal standing on behalf of SAA's former customers. The Complaint merely avers that SAA "is in the business of selling firearms parts and accessories," and would be harmed through "the loss of the value and ability to sell the firearms it lawfully acquired." Compl. ¶¶ 8, 41, ECF No. 1. Accordingly, the Complaint alleges only that SAA may be injured. It contains no allegations about any purported injury suffered by its customers; in fact, the word "customers" appears nowhere in the Complaint. The absence of any allegation in the Complaint on this score is dispositive as to SAA's standing to raise a Second Amendment claim on behalf

of its customers. *See, e.g., Teixeira*, 873 F.3d at 678–79 (rejecting derivative Second Amendment claim because plaintiff "did not adequately allege in his Complaint" that customers would be injured); *see id.* ("[T]hese vague allegations cannot possibly state a claim for relief under the Second Amendment."); *Leo Combat*, 2016 WL 6436653, at *10 (rejecting corporation's assertion of Second Amendment standing on behalf of customers in part because such argument "is not supported by the allegations in the Complaint").[1]

For the first time, at the recent preliminary injunction hearing before this Court, Plaintiffs expressed their intent to claim standing on behalf of former SAA customers. But it is "axiomatic" that litigants cannot amend their Complaint via motion papers or by oral representations. *See Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004) ("It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss."); *Crowder Lawn & Garden v. Federated Life Ins. Co.*, No. 1:09-CV-00581, 2011 WL 98815, at *5 n. 3 (S.D. Ind. Jan. 12, 2011) ("Plaintiffs cannot amend their Complaint in a response brief, and—by extension—they cannot do so at oral argument."); *see also Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012) ("[A] party cannot amend a complaint by

---

[1] Plaintiffs similarly failed to raise any such theory of customer standing in their Motion for Preliminary Injunction. *See* Pls.' Mot. for Prelim. Inj. at 13, ECF No. 21 (arguing only that the Final Rule "threatens [SAA's] business"). Nor were customers mentioned in Plaintiffs' Opposition to Defendants' Motion to Dismiss. ECF No. 29. While Plaintiffs stated in a later filing that they were "unaware of the status of compliance" of their former customers, Statement of Counsel at 1, ECF No. 32, even there, Plaintiffs did not clearly assert standing on behalf of such customers.

attaching documents to a response to a motion to dismiss."); *Evans v. Scribe One Ltd. LLC*, No. CV-19-04339-PHX-DLR, 2019 WL 6135093, at *6 (D. Ariz. Nov. 19, 2019) ("[S]he cannot amend her complaint through a reply in support of her preliminary injunction motion.").

Moreover, even at oral argument Plaintiffs failed to clearly articulate the specific injury that could give SAA standing on behalf of such customers. *See* Mot. Hearing Transcript at 7: 21-24, ECF No. 40 ("Tr.") (Plaintiffs' counsel asserted only that "it's a necessary outflow that there are certain protected acquisition interests as well as privacy interests that flow from the purchase of these firearms").

In sum, Plaintiffs failed to raise any theory of standing on behalf of SAA customers in the Complaint and their representations at oral argument do not suffice. SAA accordingly lacks standing to raise a Second Amendment claim on behalf of its customers.

**B.    SAA Cannot Establish Standing on Behalf of Former Customers.**

Even if the Court were inclined to examine Plaintiffs' belated assertion of third-party standing, the result would be the same.

As best as Defendants can discern, Plaintiffs seek to represent the interests of former SAA customers who may now take some action with their braced firearms following the Final Rule. *See* ECF No. 32 at 1 (averring that Plaintiffs are "unaware of the status of compliance of any of their customers which may have purchased . . . firearms with attached stabilizing braces prior to the complained-of conduct"); Tr. at

7

5: 6-9 (Plaintiffs' counsel stated that Plaintiffs were "not aware of" the "compliance" of SAA "customers which had purchased" firearms in the last "decade").[2]

The Eleventh Circuit has explained that a claim of third-party standing must satisfy the following prudential requirements: (1) the litigant suffered an "injury in fact," (2) the litigant has a "close relation to the third party," and (3) there must be "some hindrance" to the third party's "ability to protect his or her own interests." *Young Apartments*, 529 F.3d at 1042. Plaintiffs have failed to show that they have any "close" relationship to their former customers who may have purchased certain firearms years ago. Nor do Plaintiffs point to any "hindrance" to former customers raising their own claims regarding the Final Rule. *See Boardwalk Bros. v. Satz*, 949 F. Supp. 2d 1221, 1229 n. 6 (S.D. Fla. 2013) (noting no third-party standing in part because "[t]here is no evidence before the Court that Plaintiffs' senior citizen customers are unable to bring suit on their own behalf, if they so desire").

Moreover, while corporate entities may in certain instances "resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function[,]" *see Craig v. Boren*, 429 U.S. 190, 195 (1976), the Eleventh Circuit recently explained that "[t]he key" to third-party "standing is the

---

[2] Plaintiffs have not alleged standing on behalf of current or future customers, and they are therefore foreclosed from doing so at this late date. Nor is it apparent whether SAA could make such a claim, given that SAA has ceased selling firearms with stabilizing braces. *See* ECF No. 32. And in any event, such a claim would be speculative at best, as the Final Rule does not preclude stores from selling and customers from buying short-barreled rifles, assuming that the statutory requirements are followed.

8

causal connection between the litigant's injury and the violation of the third parties' constitutional rights." *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1266 (11th Cir. 2023). For instance, a "beer vendor's compliance with the statute forbidding the sale of low-alcohol beer to young men but not to women of the same age is what caused the equal-protection violation." *Id.*; *see also Young Apartments, Inc. v. Town of Jupiter,* 529 F.3d 1027, 1041–42 (11th Cir. 2008) (explaining that third-party standing is a limited exception to the general principle that plaintiffs lack standing "to assert the rights of third parties").

Here, SAA's purported financial injury has no connection to any constitutional claim of their former customers. Rather, Plaintiffs asserted at argument that former SAA customers previously bought braced firearms, and the Final Rule may result in those former customers taking some compliance action. *See* Tr. at 5: 6-11. Even assuming that SAA intends to argue that the compliance action of its former customers constitutes a violation of their Second Amendment rights, any such constitutional claim of *former* customers is not triggered by *current* or *future* financial injuries to SAA. Because there is no causal connection between SAA's alleged injury and the potential constitutional claims of former customers, SAA lacks third-party standing with regard to such customers.

In sum, SAA cannot state a Second Amendment claim on its own behalf, and it cannot assert third-party standing to raise a Second Amendment claim on behalf of its former customers. SAA is accordingly unlikely to succeed as to its Second Amendment claim.

Dated: August 7, 2023         Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Michael Drezner*
MICHAEL DREZNER (VA Bar No. 83836)
TAYLOR PITZ (CA Bar No. 332080)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-4505
Email: Michael.L.Drezner@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On August 7, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Middle District of Florida, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

>                    */s/ Michael Drezner*
>                    MICHAEL DREZNER
>                    Trial Attorney
>                    U.S. Department of Justice