UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE №: 8:23-cv-223

JOSIAH COLON, *et al.*,

*Plaintiffs*,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

*Defendants*.

_____/

## PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM

In the interest of this honorable Court's time, *Md. Shall Issue, Inc. v. Hogan* dispositively resolves the matters of individual and third party standing in the context of a firearms business bringing a similar lawsuit under comparable circumstances in favor of Plaintiffs. 971 F.3d 199 (4th Cir. 2020).

While Plaintiffs are pleased to see the government finally recognize "the Second Amendment protects the '*individual* right to bear arms'" ECF No. 42, it does so while attempting to short-circuit the standing analysis with the unsupported assertion that a corporate Second Amendment right to sell firearms could not exist.

This strawman argument must fail because, even without such a right, Plaintiff need assert only its ancillary right to sell. *Teixeira*, relied upon heavily

1

by Defendants, recognized that "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc). *Teixeira* involved an ordinance prohibiting the opening of a firearms store on a specific plot, and thus the logic of the court was that because it did not restrict other dealers, plaintiffs' customers could still buy elsewhere. *Id*. Unlike in *Teixeira*, the underlying conduct here infringes Plaintiff's right to sell, everyone's right to buy, and everyone—including Plaintiff's current and former customers'—right to keep and bear the affected arms. This attempt to move the standing goalpost must fail, as it has been repeatedly echoed that courts "must not confuse standing with the merits". *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421 at 429 (4th Cir. 2007); *see also NCAA v. Governor of N.J.*, 730 F.3d 208, 223 (3d Cir. 2013) ("standing analysis is not an accounting exercise"). In fact, many cases stand for the *exact opposite* of Defendants' proposition, which makes sense given that the predominant approach to applying the Second Amendment is to "look to the First Amendment as a guide." *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017) (cleaned up).

Insofar as the government focuses on former, as opposed to current or future customers, this is a distinction without a difference in the current context. In the context of a preliminary injunction, Plaintiffs now are seeking

prospective relief, as opposed to damages, where that distinction would matter. As for standing, one theory of standing here is that, to make more sales and "engage in a course of conduct arguably affected with a constitutional interest," as it did in the past, 2nd Amendment Armory and its customers cannot do so without facing "a credible threat of prosecution". *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Plaintiff is seeking relief for its right, be it ancillary or direct, to *sell*. Defendants' argument is further refuted by *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965), where a physician had standing to challenge a law criminalizing both the *use* **and** dispensing of birth control, necessitating his representation of past customers' interests.

As far as the government's contention that Plaintiffs attempted to "amend their Complaint…by oral representations", this argument is contrived. ECF No. 42 at 6. Plaintiffs do not have to articulate every possible species of standing in the complaint, nor plead legal conclusions. Plaintiffs pled enough ultimate facts to demonstrate standing. Compl. at 1 ("Defendants threaten Plaintiffs, and an unknowable number of other Americans for the simple possession of firearms.") *Id.* at 2 ("2nd Amendment Armory…has in its inventory pistols with attached stabilizing braces that are directly affected") *Id.* at 11 ("The rule affects all Americans who own pistols equipped with pistol braces and those who might use them in the future.") *Id.* at 12 ("2nd

Amendment Armory faces the loss of the value and ability to sell the firearms it lawfully acquired"). Plaintiff had, has, sold, and wishes to continue selling the affected products. Those facts are more than sufficient for standing purposes, "and because standing for one party on a given claim is sufficient to allow a case to proceed in its entirety on that issue, we need not" go further. *Md. Shall Issue*, 971 F.3d at 210.

## I.   THE RIGHT TO SELL FIREARMS COMMERCIALLY CLEARLY MUST EXIST

The Second Amendment's core right is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Kolbe*, 849 F.3d at 131 (quoting *District of Columbia v. Heller*, 554 U.S. 579 at 634–35 (2008)). The Second Amendment also confers "ancillary rights necessary to the realization of the core right." *Teixeira*, 873 F.3d 677; *see also, e.g.*, *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579–80 (1980) ("fundamental rights[] … have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined.") (footnote omitted). Courts have recognized for over 150 years that ["t]he right to keep arms, necessarily involves the right to purchase them." *Andrews v. State*, 50 Tenn. 165, 178 (1871) (cited in *Heller*, 554 at 608).

It is well-established that a buyer's right to buy may give rise to a provider's right to sell. In *Carey v. Population Services, International*, 431 U.S. 678 (1977), the Supreme Court held that "[l]imiting the distribution of

4

nonprescription contraceptives … clearly imposes a significant burden on the right of the individuals to use contraceptives." In *Planned Parenthood of Wisconsin v. Doyle*, 162 F.3d 463, 471 (7th Cir. 1998), the Seventh Circuit held that "[t]he constitutional right to an abortion carries with it the right to perform medical procedures that many people find distasteful or worse." And in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990), the Supreme Court agreed that "the right to sell [sexually explicit] material is a constitutionally protected right" that includes the right to buy it. *See also, e.g.*, *Lovell v. City of Griffin, Ga.*, 303 U.S. 444 at 447, 452 (1938) (prohibiting distribution of constitutionally protected speech amounts to "censorship in its baldest form" that renders the First Amendment protection meaningless). It bears emphasis that the case for the right to sell arms is stronger than the rights asserted in those cases heretofore cited, as unlike in the abortion, contraceptive, or pornography context, "keep[ing] and bear[ing] arms" is a Constitutionally enumerated right. U.S. Const. Amend. II. The constitutional right to buy entails the concomitant constitutional right to sell.

## II.   PLAINTIFF SECOND AMENDMENT ARMORY HAS STANDING INDIVIDUALLY

The government, in the conduct at the core of this action, makes firearm licensees like 2nd Amendment Armory gatekeepers to firearm access, and imperils licensees directly by the complained-of conduct. Where "the plaintiff

is himself an object of the action…there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 561-62 (1992). Like in *Md. Shall Issue*, 2nd Amendment Armory is "obliged to either heed the statute, thereby incurring a direct economic injury through the constriction of its buyers' market, or to disobey the statutory command and suffer." 971 F.3d at 213 (quoting *Craig v. Boren*, 429 U.S. 190 at 194 (1976)) (cleaned up).

As the Supreme Court has made clear, lost business opportunities are economic harm, which are a paradigmatic form of injury in fact. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 194 (1976); *see also Ross v. Bank of Am. , N.A.*, 524 F.3d 217, 222 (A "loss of even a small amount of money is ordinarily an 'injury.'"). In *Md. Shall Issue*, firearms dealer Atlantic Guns was found to have "suffered an injury through the constriction of its pool of potential customers" due to Maryland's handgun permitting scheme. 971 F.3d at 212. It is uncontested that the business Plaintiff has suffered a loss in sales and value of the pistol braces and short firearms it possesses, and the government's own rulemaking conservatively estimates multi-million-dollar costs to the arms industry.

Like Atlantic Guns in *Md. Shall Issue*, 2nd Amendment Armory is "virtually indistinguishable from the beer vendor in *Craig v. Boren*, where the

6

Supreme Court concluded that 'the constriction of a vendor's buyers' market 'plainly' inflicts an 'injury in fact' sufficient to guarantee it concrete adverseness." *Id*. (quoting *Craig*, 429 U.S. 97) (cleaned up).

### III. PLAINTIFF SECOND AMENDMENT ARMORY HAS THIRD PARTY STANDING TO ASSERT ITS CUSTOMERS' RIGHTS TO ACQUIRE, KEEP, AND BEAR THE AFFECTED FIREARMS

Even without a right to sell guns, 2nd Amendment Armory has standing to assert the rights of its customers because enforcement of the complained-of conduct results, both directly and indirectly, in the violation of its customers' rights. The underlying conduct threatens revocation of a firearms license—the necessary ticket to lawful participation in the interstate firearms market—if dealers do not fall in line with the complained-of command. As for past customers, the complained-of conduct violates their rights while implicating Plaintiff in myriad ways, such as preventing returns or service of firearms with attached braces, as Plaintiff would be unable to take receipt of the affected arms without destroying their value or function. Firearms dealers like 2nd Amendment Armory and Atlantic Guns are no different than the

> vendors and those in like positions [who] have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.

*Craig*, 429 U.S. at 194-95. Three circuit courts have considered whether a firearms-related business fits within a rule allowing third party standing

where enforcement of the challenged statute against the litigant results indirectly in the violation of its customers' rights. All courts, citing *Craig*, determined that they do. *Md. Shall Issue*, 971 F.3d 1990; *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (supplier of firing-range facilities had standing to challenge Chicago ordinance banning firing ranges on behalf of potential customers); *Teixeira v. Cty. Of Alameda*, 822 F.3d 1047, 1054 (9th Cir. 2016) (rev'd on other grounds by 873 F.3d 670 (9th Cir. 2017)). Indeed, even *Teixeira*'s *en banc* rehearing, which the government refers to as "the leading case in this area" ECF No. 42 at 3—despite it being neither the most recent nor the most exhaustive analysis—agreed that a *would-be* operator of a gun store "has derivative standing to assert the subsidiary right to acquire arms on behalf of his potential customers." 873 F.3d at 678. *Teixeira* did not dispose of the case on standing, especially where *Teixeira*'s and other circuit cases' standing analyses included information disclosed in discovery and were supported by affidavits where necessary. *Cf. id. with* ECF No. 42 at 5-6.

Plaintiff 2nd Amendment Armory has third party standing to assert its customers' rights for a second, independent reason: it has a close relationship with them, and their privacy concerns surrounding firearm ownership, and their justifiable fear of Defendants' retribution hinder them from bringing suit. *See, e.g., Kowalski*, 543 U.S. at 130.

8

The Supreme Court has explained that "the relationship of the litigant to the person whose right he seeks to assert" is sufficiently close "[i]f the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue." *Singleton v. Wulff*, 428 U.S. 106, 115 (1976). Because Plaintiff's customers' right to keep and acquire the affected arms is inextricably bound up with Plaintiff's ability to sell and support them, *see United States v. Marzzarella*, 614 F.3d 85 at 92 n. 8 (3d Cir. 2010), Plaintiff and its customers have a close relationship. In any event, courts hold unanimously that a business has a sufficiently close relationship with its customers when, like here, the challenged law prevents the business from transacting with them. *E.g., Lepelletier v. F.D.I.C.*, 164 F.3d 37, 43–44 (D.C. Cir. 1999) (finding a close relationship on "the basis of the vendor-vendee relationship alone") (internal quotation omitted); *Craig*, 429 U.S. at 192–97 (vendors have a close relationship with their potential vendees); *Carey*, 431 U.S. at 683 (same).

Plaintiff's customers' privacy concerns hinder them from bringing suit. The hindrance requirement is a low threshold that does not require an inability to bring suit. *Singleton v. Wulff*, 428 U.S. 106 at 117 (1976). It is met, for instance, where an individual's privacy concern discourages him from bringing suit. *Id*.; *see also Carey*, 431 U.S. at 684 n. 4 (holding that a "vendor's standing to assert the rights of potential purchasers of his product is . . . compelling,"

especially where the "rights involved fall within the sensitive issue of personal privacy"). An individual's status as a firearms owner is a sensitive issue of personal privacy, and especially concerning where the government threatens severe consequences for possessing an affected firearm. Courts in other jurisdictions agree that firearm ownership is "a personal decision of considerable importance" that "reveals intimate or embarrassing details of an individual's private life." *Mager v. State, Dep't of State Police*, 460 Mich. 134, 143 (1999). It may be fairly inferred from the undisputed facts that Plaintiff's customers, with whom Plaintiff has a close relationship, are likely discouraged from bringing suit and revealing the "intimate" details of their firearms ownership, especially after the passing of an arbitrary time period forced by Defendant so intensely imperils them.

Dated August 14, 2023                    Respectfully submitted,


*/s/Matthew Larosiere*                   */s/ Zachary Zermay*
Matthew Larosiere, Esq.                  Zachary Z. Zermay, Esq.
6964 Houlton Circle                      1762 Windward Way
Lake Worth, FL 33467                     Sanibel, FL 33957
Email: larosieremm@gmail.com             Email: zach@zermaylaw.com
Telephone: 561-452-7575                  Telephone: 239-699-3107
*Lead Counsel for Plaintiffs*            *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

On August 14, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Middle District of Florida, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
*Counsel for Plaintiffs*

11