## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Firearms Regulatory Accountability Coalition, Inc., States of West Virginia, North Dakota, et al., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER DENYING PLAINTIFFS'** |
| | ) | **MOTION FOR PRELIMINARY** |
| vs. | ) | **INJUNCTION** |
| | ) | |
| | ) | Case No.: 1:23-cv-024 |
| Merrick B. Garland, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Plaintiffs' "Motion for Preliminary Injunction" filed on February 10, 2023. See Doc. No. 7. The Plaintiffs also moved for an oral argument. See Doc. No. 8. The Plaintiffs seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, specifically requesting to enjoin the Defendants from enforcing their January 31, 2023, regulation and its accompanying adjudications. See Doc. No. 7 and Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) (the "Final Rule"). The matter has been fully briefed and is now ripe for disposition. For the reasons set forth below, the Court denies the Plaintiffs' motion for preliminary injunction (Doc. No. 7).

## I.    BACKGROUND

### A.    STATUTORY AND REGULATORY BACKGROUND

In the first major federal attempt to regulate firearms, Congress enacted the National Firearms Act of 1934 ("NFA"), 26. U.S.C. §§ 5801–5872, which focused particularly on dangerous and concealable weapons used in organized crime. See Lomont v. O'Neill, 285 F.3d 9, 11 (D.C. Cir. 2002) (internal citations omitted). To that end, the Act identifies eight specific

1

categories of "firearms" that are subject to certain registration and use requirements and associated taxes. 26 U.S.C. §§ 5801–02, 5811–12, 5821–22, 5841, 5845(a). Relevant to this dispute is the category of short-barreled rifles, i.e., "a rifle having a barrel or barrels of less than 16 inches in length" or "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length." Id. § 5845(a)(3), (4). The Act defines a "rifle" as:

> [A] weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

Id. § 5845(c). Given its focus on particular weapon categories, the NFA does not define every type of firearm, e.g., handguns, and specifically exempts "a pistol or a revolver having a rifled bore" from its statutory purview. Id. § 5845(e).

Thirty years later, Congress enacted the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921–931, which expanded federal firearms regulation in an effort to address the "widespread traffic in firearms and . . . their general availability to those whose possession thereof was contrary to the public interest." Huddleston v. United States, 415 U.S. 814, 825–26 (1974). The GCA amended the NFA in some respects, defined additional terms, and reinforced the NFA in others. See 18 U.S.C. §§ 921–22. Among other terms, the GCA defined "handgun" as "(A) a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and (B) any combination of parts from which a firearm described in subparagraph (A) can be assembled." Id. § 921(a)(30). The GCA's definition of "rifle" is identical to that of the NFA. Id. § 921(a)(7).

2

The authority to administer and enforce the National Firearms Act and the Gun Control Act is vested in the Attorney General, 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 18 U.S.C. § 926(a), who delegated that responsibility to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). 28 C.F.R. § 0.130. The ATF has subsequently promulgated rules and regulations in keeping with that delegation of authority, including by classifying particular weapons and devices as subject to or exempt from federal regulation. 27 C.F.R. parts 478, 479; U.S. ATF, Open Letter on the Redesign of "Stabilizing Braces" (Jan. 6, 2015) (indicating that using a stabilizing brace "as a shoulder stock" transforms a pistol or handgun into "a NFA firearm"); U.S. ATF, Reversal of ATF Open Letter on the Redesign of "Stabilizing Braces" (Mar. 21, 2017) (clarifying that purely "incidental, sporadic, or situational 'use'" of a stabilizing brace would not transform a pistol into an NFA-covered firearm).

Since 2012, the ATF has seen a wide variety of "stabilizing brace" devices, which were originally designed "to assist people with disabilities or limited strength or mobility" to fire heavy pistols safely and single-handedly. Over time, the devices began to include characteristics resembling shoulder stocks. The ATF soon learned that manufacturers were widely marketing these "stabilizing braces" to consumers as a means of creating functional short-barreled rifles without complying with NFA requirements.

In response to this trend, the ATF published a notice of proposed rulemaking (NPRM) in June 2021, which proposed amendments to 27 C.F.R. §§ 478.11 and 479.11 and identifying criteria by which the ATF would determine whether a weapon was a "rifle" for purposes of the NFA and the GCA. 86 Fed. Red. 30,826. After receiving more than 230,000 public comments on the NPRM, the ATF published its Final Rule on January 31, 2023. Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023). The Final Rule

modified the ATF's earlier regulations addressing how the agency would determine whether a weapon is a "rifle" for purposes of the NFA and GCA. Id. at 6,480. Specifically, the Final Rule indicates that the ATF interprets the phrase "designed or redesigned, made or remade, and intended to be fired from the shoulder" to include, "a weapon that is equipped with an accessory, component, or other rearward attachment (e.g., a "stabilizing brace") that provides surface area that allows the weapon to be fired from the shoulder, provided other factors . . . indicate that the weapon is designed, made, and intended to be fired from the shoulder." Id. (interpreting the identical definition of "rifle," which is defined similarly in both the NFA and GCA, 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7)).



(The firearms pictured on the top of each display are pistols with an attached "stabilizing brace." The firearms pictured on the bottom of each display are commercial rifles with a shoulder stock. The weapons being compared in each figure are marketed by the same company.) See Fed. Reg. at 6,494; Doc. No. 63, p. 15.

The other factors relevant to the ATF's determination of a "rifle" are:

(1) Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

(2) Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component

4

or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;

(3) Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;

(4) Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;

(5) The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and

(6) Information demonstrating the likely use of the weapon in the general community.

Id. While the NPRM had proposed a table (Worksheet 49999) that allotted points for specific criteria, the Final Rule did not implement the weighted point system. Id. at 6,479–80. The Final Rule took immediate effect for newly made or transferred firearms, but gave individuals already possessing subject firearms until May 31, 2023, to come into compliance by registering, permanently modifying, or disposing of the firearms in accordance with ATF instructions. Id. at 6,570. The Final Rule now makes certain pistols equipped with stabilizing braces subject to the more heightened regulations outlined in the National Firearms Act of 1934 and the Gun Control Act of 1968.

B. **FACTUAL BACKGROUND**

The Plaintiffs—a firearm manufacturer, a stabilizing-brace manufacturer, an association, an individual who possesses weapons equipped with stabilizing braces, and twenty-five states—argue that the Final Rule and the ATF's interim guidance violate the Administrative Procedure Act ("APA"). See Doc. No. 1. The Plaintiffs are requesting the Court order a preliminary injunction, specifically seeking to enjoin the Defendants from enforcing the January 31, 2023, regulation and its accompanying adjudications. See Doc. No. 7. This lawsuit is a challenge to the Final Rule which announced that a device marketed as a stabilizing brace transforms a pistol or handgun into a rifle. In most cases, such a weapon would then be characterized as a short-barreled rifle.

The NFA-regulated firearms require registration in the National Firearms Registration and Transfer Record. See 26 U.S.C. § 5841(a). NFA-regulated firearms may not be possessed, made, or transferred without the authorization of the Attorney General. 26 U.S.C. §§ 5812, 5822. The ATF's authorization is also required before crossing state lines with an NFA weapon. 18 U.S.C. § 922(a)(4).

In addition, importers, manufacturers, and dealers of short-barreled rifles must register with the ATF, must pay a special occupation tax annually, and must register any short-barreled rifle they manufacture. See 26 U.S.C. §§ 5801-02. And when purchased by individuals, short-barreled rifles are subject to a $200 transfer stamp. Id. A failure to comply with the requirements of the NFA and the GCA carries severe consequences, including criminal penalties, fines, and seizure and forfeiture of the firearms. See 18 U.S.C. § 924(a)(1); 26 U.S.C. § 5871-72.

As a result, there are incentives not to own a short-barreled rifle. The ATF asserts that manufacturers began making stabilizing braces and various pistols so consumers could obtain a

short-barreled rifle without the required authorization. The record reveals that pistol-type braces or stabilizing braces have been used in many violent crimes and mass shootings. The ATF points to mass shootings in Boulder, Colorado, and Dayton, Ohio, where shooters killed 19 persons while using a stabilizing brace as a shoulder stock. See Final Rule at 6508. The ATF considers short-barreled rifles as "dangerous and unusual due to both their concealability and their heightened ability to cause damage. Id. at 6499. The new stabilizing brace rule was apparently introduced as a part of comprehensive gun crime safety strategy in response to the mass murders in Colorado and Ohio.

The ATF has concluded that under its new definition of "rifle" approximately 99% of pistols with stabilizing braces would be classified as "rifles." See ATF, RIN at 1140-AA55, Factoring Criteria for Firearms with Attached "Stabilizing Braces;" Final Regulatory Impact Analysis (2023). See Doc. No. 7-1, p. 11. The ATF's new rule categorizes pistols with attached stabilizing braces as short-barreled rifles which are in turn heavily regulated by Congress. According to the ATF, at least three million guns with stabilizing braces are in circulation throughout the United States. Other estimates by the Congressional Research Service reveal between 10-40 million stabilizing braces in circulation. See Handguns, Stabilizing Braces, and Related Components, Congressional Research Service (April 19, 2021).

Suffice it to say the Final Rule is controversial and inconsistent with other positions taken by the ATF over the past decade relating to stabilizing braces. The ATF has emphasized the fact the Final Rule does not ban stabilizing braces or prohibit firearms with a stabilizing brace. See Final Rule at 6480, 6506, 6509. Instead, if the clarified definitions reveal a firearm owner now possesses a short-barreled rifle, the ATF provides for five options:

1. Remove the short barrel and attach a 16-inch or longer rifled barrel to the firearm.

    2. Permanently remove and dispose of, or alter, the "stabilizing brace" such that it cannot be reattached.
    3. Turn the firearm into a local ATF office.
    4. Destroy the firearm.
    5. Register the firearm with the ATF as a short-barreled rifle per the NFA requirements.

<u>See</u> Final Rule at 6570.


## II.    <u>STANDARD OF REVIEW</u>

The Plaintiff seeks to obtain a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. It is well-established in the Eighth Circuit Court of the Appeals that courts are required to consider the factors set forth in <u>Dataphase Systems, Inc., v. C L Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981), in determining whether a preliminary injunction should be issued. The *Dataphase* factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." <u>Id.</u>

It is well-established that the movant has the burden of establishing the necessity of a preliminary injunction. <u>Baker Elec. Coop., Inc. v. Chaske</u>, 28 F.3d 1466, 1472 (8th Cir. 1994). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." <u>Id.</u> at 1472. "A preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 24 (2008).

## III.  LEGAL ANALYSIS

### A.  PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's likelihood of success on the merits, the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987).  At this preliminary stage, the Court need not decide whether the party seeking the preliminary injunction will ultimately prevail.  PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007).  Although a preliminary injunction cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'"  Id.  The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant."  S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).  A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" Dataphase factor.  See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Plaintiffs attack the Final Rule on several grounds: (1) that the Final Rule exceeds the ATF's statutory authority, (2) that the factors adopted by the Final Rule are otherwise unlawful, and (3) that the adjudications are unlawful and confirm the Final Rule is arbitrary. The Court will address each of these arguments.

1. **SECOND AMENDMENT**

At the outset, it is clear that uniquely dangerous weapons, including short-barreled rifles, **are not protected** by the Second Amendment. This lawsuit **is not** a challenge to the constitutionality of the Final Rule. The United States Supreme Court recognized in *Heller* that the Second Amendment does not protect "weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." District of Columbia v. Heller, 554 U.S. 570, 625 (2008). Federal courts have extended this same analysis to short-barreled rifles. United States v. Cox, 235 F. Supp. 3d 1221, 1227 (D. Kan. 2017); See United States v. Royce, 2023 WL 2163677 at 3 (D.N.D. Feb 22, 2023) (holding short-barreled rifles and shotguns are dangerous and unusual weapons not protected by the Second Amendment). The ATF's Final Rule simply identifies criteria for short-barreled rifles and does not implicate the Second Amendment.

Further, laws that regulate the use of firearm accessories or attachments do not, as a general rule, implicate the Second Amendment. For example, federal courts have held that a silencer is not a firearm on its own but rather a firearm accessory. As a result, a silencer is not a bearable arm protected by the Second Amendment. United States v. Cox, 906 F.3d 1170, 1186 (10th Cir. 2018). Similarly, a stabilizing brace, like a silencer, cannot cause harm on its own and is not a bearable arm which would implicate Second Amendment protections.

More important, the ATF's Final Rule does not ban stabilizing braces or firearms equipped with them. Instead, the Final Rule requires individuals and entities to comply with the NFA's statutory requirements by registering the weapons with the ATF or permanently detaching the stabilizing brace from the pistol. Simply stated, the Second Amendment is not at issue in this lawsuit, nor does the Second Amendment provide a "regulatory blank check" to

possess a stabilizing brace or a short-barreled rifle. The Second Amendment does not prohibit reasonable licensing regimes associated with ownership of a firearm. See N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2162 (Kavanaugh, J. concurring).

### 2. *MOCK V. GARLAND*

Multiple cases like the one currently before this Court are circulating through federal courts nationwide.[1] In an action similar to the instant case, the Plaintiffs in Texas filed a lawsuit challenging the Final Rule on constitutional and procedural grounds and moved the Court for a preliminary injunction or, in the alternative, for postponement of the Final Rule's effective date under 5 U.S.C. § 705. Mock v. Garland, 2023 U.S. Dist. LEXIS 54776 (N.D. Tex., Mar. 30, 2023). The federal district court in Texas held that the Plaintiffs had not carried their burden to demonstrate their substantial likelihood of success on the merits on any of their claims and denied the Plaintiffs' motion for preliminary injunctive relief or, in the alternative, for postponement of the Final Rule's effective date.

The Plaintiffs appealed the decision from the United States District Court for the Northern District of Texas to the Fifth Circuit Court of Appeals. On appeal, the Plaintiffs challenged the ATF's Final Rule instituting a six-factor balancing test when considering if a stabilizing brace transformed a pistol or handgun into a short-barreled rifle. On August 1, 2023, in a 2-1 decision, the Fifth Circuit Court of Appeals reversed the district court's denial of a preliminary injunction. Mock v. Garland, 2023 U.S. App. LEXIS 19846 (5th Cir. Aug. 1, 2023).

---

[1] Texas v. ATF, 6:23-cv-00013 (S.D. Tex.); Colon v. ATF, 8:23-cv-00223 (M.D. Fla.); Second Amendment Found. v. ATF, 3:21-cv-00116 (N.D. Tex.); Britto v. ATF, 2:23-cv-00019 (N.D. Tex.); Watterson v. ATF, 4:23-cv-00080 (E.D. Tex.); Nat'l Rifle Ass'n of Am., Inc. v. ATF, 3:23-cv-01471 (N.D. Tex.); Miller v. Garland, 2023 U.S. Dist. LEXIS 93105 (E.D. Va., May 26, 2023); Mock v. Garland, 2023 U.S. Dist. LEXIS 54776 (N.D. Tex., Mar. 30, 2023).

This Court is aware of the reversal rendered in *Mock* and understands its significance, but is not bound nor persuaded by the 2-1 holding of the Fifth Circuit Court of Appeals. To the contrary, the reasoning and dissent of Circuit Judge Stephen A. Higginson is more persuasive in urging the appellate court to uphold the denial of preliminary injunctive relief by the district court.

### 3. <u>THE ATF'S STATUTORY AUTHORITY</u>

This Court finds that the ATF was within its authority to effectuate the Final Rule and the Plaintiffs' claim is unlikely to succeed on the merits. The Plaintiffs first argue the Final Rule violated the APA because the ATF lacked authority to promulgate the Final Rule because it "misinterprets" the statutory definition of "rifle" and "regulates" weapons that are not regulated under the NFA or the GCA. <u>See</u> Doc. No. 7-1, p. 18-31. In the same context, the Plaintiffs suggest the ATF lacked authority to promulgate the Final Rule because these statutes "unambiguously exclude" pistols equipped with "stabilizing braces" from controls applicable to short-barreled rifles. <u>Id.</u> In response, the Defendants contend that Plaintiffs' arguments run contrary to basic principles of statutory construction; the Final Rule fits squarely within the ATF's delegated authority, and correctly construes the relevant statutory provisions. <u>See</u> Doc. No. 63, p. 22. In reply, the Plaintiffs reassert many of the same arguments presented in its motion and do not waiver from its position that the Final Rule exceeds ATF's statutory authority. <u>See</u> Doc. No. 66, p. 8.

The APA requires reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). When agencies are given the authority to administer and enforce a statute, they often must interpret relevant provisions to

ensure efficient and accurate implementation. Gonzales v. Oregon, 546 U.S. 243, 255 (2006). It is not for the reviewing court to substitute its view for that of the administrative agency. However, an agency is constrained by the language of the statute it must administer and may not rewrite or redefine terms in a way that contradicts the original statute. Texas v. United States, 497 F.3d 491, 500-01 (5th Cir. 2007) (Massachusetts v. EPA, 549 U.S. 497, 532 (2007).

As courts have consistently recognized, the ATF has the authority to interpret the NFA and GCA where there is ambiguity, meaning that it is not likely the Plaintiffs will succeed on this claim. Mock v. Garland, No. 4:23-CV-00095-O, 2023 U.S. Dist. LEXIS 54776, 2023 WL 2711630, at *4 (N.D. Tex. Mar. 30, 2023) (citing Guedes v. BATFE, 356 F. Supp. 3d 109, 129 (D.D.C. 2019)) (upholding the ATF's interpretation that a bump stock is a machine gun as defined under the NFA). In addition, the statutory definition of "rifle" in the GCA and NFA uses terms such as "designed" "redesigned," "remade," and "intended[,]" and Congress did not shed any additional light on the definition of rifle. 26 U.S.C. § 5845(c). As the federal district court held in *Mock*, in order to apply the statutory definition, it is "necessarily require[d]" to "evaluate objective weapon characteristics, and perhaps conduct to decide whether a particular firearm is subject to the NFA." Mock, 2023 WL 2711630 at *8.

The ATF has maintained regulations for decades that clarify the meaning of statutory terms that Congress did not fully define. See 88 Fed. Reg. at 6,500. And consistent with this longstanding practice, the ATF issued the Final Rule to clarify the meaning and proper application of another definitional phrase: "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). The federal district court in the Eastern District of Virginia recognized, "a rule that clarifies when an accessory, such as a stabilizing brace, remakes or redesigns a firearm to make it into a short-

13

barreled rifle does not exceed ATF's statutory authority." <u>Miller v. Garland</u>, 2023 U.S. Dist. LEXIS 93105, at *10-11 (E.D. Va. May 26, 2023). The Court finds that the Final Rule does not "rewrite" the definition of rifle, but rather provides guidance for enforcers to determine when a particular weapon with a stabilizing brace falls under the purview of the National Firearms Act.

This Court is not convinced that the ATF's interpretation of a short-barreled rifle contradicts the original meaning of "rifle" such that a preliminary injunction is warranted at this stage of the case. The Court recognizes that the Plaintiffs make some reasonable arguments in support of their position, but none necessitate the issuance of a preliminary injunction at this state which is an extraordinary remedy. Therefore, the Plaintiffs have not met their burden on this particular APA claim.

### 4. <u>RULE OF LENITY</u>

The Plaintiffs contend in their motion that the Final Rule violates the rule of lenity and the Final Rule should be set aside. <u>See</u> Doc. No. 7-1, p. 28. The rule of lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. <u>Albernaz v. United States</u>, 450 U.S. 333, 342 (1981). The "touchstone" of the rule of lenity "is statutory ambiguity." <u>Id.</u> However, the rule of lenity only applies in cases of genuine ambiguity. <u>Voisine v. United States</u>, 579 U.S. 686, 698 (2016). "Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent." <u>Ladner v. United States</u>, 358 U.S. 169, 178 (1958). Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation "at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." <u>Callanan v. United</u>

States, 364 U.S. 587, 596 (1961). It is well established that ambiguities within "a criminal statute should be resolved in the defendant's favor." U.S. v. Davis, 139 S. Ct. 2319, 2333 (2019).

The Plaintiffs argue the rule of lenity demands the Final Rule be set aside for two reasons. First, the Plaintiffs argue the NFA and GCA encompass rifles produced with short barrels and barrels that were cut down, not pistols with stabilizing braces. See Doc. No. 7-1, p. 29. In addition, the Plaintiffs contend, "[i]f the agency charged with administering the NFA believed for years that pistols equipped with stabilizing braces are not subject to NFA or GCA controls, the application of the statute to such braces must at a minimum be grievously ambiguous." See Doc. 7-1, p. 31.

The Plaintiffs' argument is rooted in the assertion of their position: the NFA and GCA's definition of a rifle. The NFA and GCA define "rifle" as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder . . ." and define a "short-barreled rifle" as a rifle "having one or more barrels less than sixteen inches in length." 88 Fed. Reg. 6,478–79 (quoting 18 U.S.C. § 921(a)(7), (8); 26 U.S.C. § 5845(c)). The definition is not unclear as argued by the Plaintiffs, nor is it so grievously ambiguous such that the rule of lenity is necessary. From the very language spelled out in the definition of "rifle", a court can easily surmise that Congress intended for weapons with a barrel of less than 16 inches in length and intended to be fired from the shoulder to be encompassed by the NFA. Congress' intention is not unclear, ambiguous, or convoluted; therefore, an ambiguity would have to be manufactured, which is in direct contradiction of established law. Ladner, 358 U.S. at 178 ("Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent.") The Plaintiff's argument regarding the rule of lenity is unpersuasive. See Mock, 2023 WL 2711630, at *6 (holding Plaintiffs did not satisfy their burden to show likelihood of success on

15

the merits with regard to lenity where the ATF's pistol brace rule merely interprets the NFA and GCA). Therefore, the Plaintiffs have not shown they are substantially likely to succeed on the rule of lenity claim.

### 5.   __ARBITRARY AND CAPRICIOUS__

The Plaintiff's contend that the Final Rule is arbitrary and capricious for numerous reasons. First, the Plaintiffs argue that the ATF's factors used to consider "whether the weapon is designed, made, and intended to be fired from the shoulder" are "holistically arbitrary." See Doc. No. 7-1, p. 32. The Plaintiffs contend the Final Rule is "infinitely malleable" because of the ATF's use of "self-conferred discretion" when considering these factors. Id. They undertake the presumption that the ATF "will use its self-conferred discretion not for fair determinations but to accomplish the Administration's political goal." Id. at p. 33-34. Next, the Plaintiffs argue the ATF's factors are likewise arbitrary and capricious when considered individually. Id. at p. 34. The Plaintiffs individually list the factors considered and cite to the alleged problems therein. For example, when considering the "length of pull factor," the Plaintiffs critique and question "why [the ATF] cannot be 'more precise.'" Id. at p. 37. Further, the Plaintiffs believe the reasoning supporting the "necessity of function" factor is "internally inconsistent." Id. at p. 39. The Plaintiffs also take issue with the agency's inclusion of firearm marketing materials. Id. More precisely, "[t]he manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon" and "[i]nformation demonstrating the likely use of the weapon in the general community." Fed. Reg. at 6,575.  In opposition, the Defendants contend the Final Rule's factors are reasonable when considered together and the Plaintiff cannot show that the ATF's analysis of the factors is irrational. See Doc. No. 63, p. 35-36. The Defendants

explain, "the [Final] Rule and its related guidance provide far greater clarity than the status quo ex ante." Id. at p. 36. In addition, the Defendants contend the factors spelled out by the ATF are reasonable when considered individually, much like they were when considered together. Id. at p. 37.

"The APA's arbitrary-and-capricious standard requires that an agency action be reasonable and reasonably explained." FCC v. Prometheus Radio Project, 141 S. Ct. 1150, 1158 (2021). In evaluating an arbitrary-and-capricious challenge, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." Ren v. United States Citizenship & Immigr. Servs., 60 F.4th 89, 93 (4th Cir. 2023) (citing Prometheus Radio Project, 141 S. Ct. at 1158. Agencies often implement multi-factor balancing tests. PDK Labs. v. United States DEA, 438 F.3d 1184, 1194, 370 U.S. App. D.C. 47 (D.C. Cir. 2006) ("Agencies routinely employ multi-factor standards when discharging their statutory duties[.])" All that is required is that the agency "define and explain the criteria applied." Catawba County v. EPA, 571 F.3d 20, 39 (D.C. Cir. 2009).

The Final Rule explains that for a firearm "marketed as a pistol that is a variant of a firearm," the ATF will compare the weight and length to those "of variants designed, made, and intended to be fired from the shoulder." 88 Fed. Reg. at 6,518. Consistent with the definition under the NFA and GCA, the inquiry is whether a firearm is designed or intended to be fired from the shoulder, not whether it can be fired with one arm. Id. at 6,501. The Plaintiffs and other litigants have argued that the definition of a rifle should be limited to devices that are designed to be exclusively fired from the shoulder, but many courts have rejected this interpretation of the statute. See United States v. Rose, 695 F.2d 1356, 1357-58 (10th Cir. 1982); United States v.

17

Schuhmann, 963 F.2d 381 (9th Cir. 1992); Sipes v. United States, 321 F.2d 174, 178 (8th Cir. 1963) (explaining the fact that a weapon "could be fired elsewhere than from the shoulder makes it no less a rifle within the statutory definition"), *overruled on other grounds by* Haynes v. U.S., 390 U.S. 85, 88 (1968). This Court finds the ATF has acted within the "zone of reasonableness." Prometheus Radio Project, 141 S. Ct. at 1158. Accordingly, the Plaintiffs have not met their burden of demonstrating that the regulation is arbitrary and capricious.

### 6. COST-BENEFIT ANALYSIS

The Plaintiffs also argue the ATF's cost-benefit analysis was deficient, rendering it arbitrary. See Doc. No. 7-1, p. 40. They cite to four alleged deficiencies. First, they argue, "ATF excluded from its assessment without explanation all stabilizing braces sold in 2020, 2021, and 2022. Id. at p. 41; See Regulatory Analysis at 18. Next, they contend the ATF did not consider known "consumer surplus," rather they considered "average" sales price to consider cost. Id. The Plaintiffs also argue the ATF failed to "carefully consider[] possible reliance interests. Id. Finally, the Plaintiffs claim the ATF made no effort to quantify the Final Rule's benefits. Id. In opposition, the Defendants contend that the ATF's cost-benefit analysis was reasonable and is not arbitrary. See Doc. No. 63, p. 41. The Defendants refer to the ATF's Regulatory Impact Analysis ("RIA") and its 40-page discussion of costs and stabilizing braces in circulation. Id. Next, the Defendants contend "consumer surplus" is accounted for because the ATF's analysis relies on average market price, which contemplates surplus. Id. at p. 42 Finally, the Defendants maintain that the Final Rule and regulatory analysis included forethought of benefits to public safety. Id.

The discussion undertaken by the federal district court in the Eastern District of Virginia

in Miller v. Garland accurately reflects the cost-benefit analysis this Court will follow:

> The Court recognizes that benefits to public safety are difficult to quantify, and the "the law does not require agencies to measure the immeasurable." Inv. Co. Inst. v. CFTC, 720 F.3d 370, 379 (D.C. Cir. 2013); Fox Television Stations, Inc., 556 U.S. at 519 (declining to "insist" agencies "obtain[] the unobtainable"); Inv. Co. Inst., 720 F.3d at 379 ("Where Congress has required 'rigorous, quantitative economic analysis,' it has made that requirement clear in the agency's statute." Further, ATF's analysis of cost seems reasonable at this stage of the proceedings. The Agency issued a Final Regulatory Impact Analysis that included a 40-page discussion of costs. ATF, *Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis* (Jan. 2023), at 28-67 https://perma.cc/96PV-KRB9 ("RIA"). ATF calculated the anticipated cost of the Final Rule by doubling its initial estimate of pistols outfitted with stabilizing braces, which was based partly on evidence from brace manufacturers, to account for any incorrectly low numbers. RIA at 18-22. ATF also explained it declined to rely on the CRS estimate because "[u]sing the upper end of the range would mean there [were] at least as many 'brace' devices or firearms with an attached 'brace' device as there are pistols that were manufactured in the U.S. between 2013 to 2020 (i.e., 32.4 million pistols)," and applying the lower end of the range "would mean nearly a third of pistols manufactured between 2013 to 2020 [were] equipped with a 'stabilizing brace,' even though braces are only used on a subset of pistols, and not all pistols are types for which a person would attach a brace." RIA at 19-20.

> The Court is not swayed by Plaintiff's claim that the Final Rule is deficient because it relied on different justifications than the NPRM. As the court in *Mock* found, interpretive rules such as the one at issue are not subject to APA's requirements such as the logical outgrowth test, which seems to be the crux of Plaintiff's claim. Mock, 2023 U.S. Dist. LEXIS 54776, 2023 WL 2711630 at *5. Thus, interpretive rules are not required to use the same justifications for proposed rules and final rules. Id. Even assuming the rule is legislative, the [] Rule likely survives this procedural challenge because the negative externality justification was removed in response to public comment, 88 Fed. Reg. at 6,559, and the Final Rule provided an otherwise adequate though not perfect cost-benefit analysis.

Miller v. Garland, 2023 WL 3692841, *5-6. Much like the federal district court in *Miller*, this

Court finds the ATF's cost benefit analysis to be reasonable, and the Plaintiffs are unlikely to

succeed on the merits of this claim.

## 7.     THE FINAL RULE'S EFFECTIVE DATE (RETROACTIVITY)

The Plaintiffs contend that the Final Rule is impermissibly retroactive because the ATF "has no authority to promulgate retroactive" regulations under the GCA. See Doc. No. 7-1, p. 42. According to the Plaintiffs, "[t]his prohibition dooms the [Final] Rule." Id. Further, the Plaintiffs characterize the Final Rule as a "statutory grant of legislative rulemaking." Id. In opposition, the Defendants argue the Final Rule is purely interpretive, and all relevant criminal prohibitions come from the NFA and GCA – thus, the effective date is lawful. See Doc. No. 63, p. 42. This Court agrees with the Defendants.

Though the Congressional Review Act ("CRA") states a "major rule cannot 'take effect' until the later of" 60 days after presentment to Congress or it is published on the Federal Register[,]" courts have held that provision "does not change the date on which the regulation becomes effective." Liesegang v. Sec'y of Veterans Affs., 312 F.3d 1368, 1375 (Fed. Cir. 2002), amended in part on reh'g, 65 F. App'x 717 (Fed. Cir. 2003). The CRA simply creates a "60-day waiting period" for enforcement of a major rule. Liesegang, 312 F.3d at 1375. The Final Rule does not run afoul of CRA requirements because the ATF implemented a 60-day waiting period for the enforcement, though it was immediately effective.

More important, final rules that are "interpretive" are not subject to the same requirements as legislative rules, and interpretive rules may take immediate effect. 5 U.S.C. § 553(d). An interpretive rule is a rule "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 97 (2015). Interpretive rules "do not have the force and effect of law." Id. (citing Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99 (1995)). This Court finds that the Final Rule is interpretative and provides guidance to the general public regarding the ATF's interpretation of

definitions in the NFA and the GCA. The Plaintiff's characterization of the Final Rule as legislative is unpersuasive and the immediate effective date is not unlawful.

8. <u>**FINAL AGENCY ACTION**</u>

In their motion, the Plaintiffs argue the ATF unlawfully issued dozens of, what they characterize as, adjudications classifying common weapon platforms equipped with stabilizing braces and commercially available firearms equipped with braces. <u>See</u> Doc. No. 7-1, p. 7, 33. The Plaintiffs contend the Final Rule the ATF adopted substantially differs from the points based "worksheet" initially proposed and, as such, the Final Rule should be vacated because it is contrary to the APA. <u>Id.</u> at p. 34. In opposition, the Defendants argue the guidance is not final agency action and is thus not reviewable under the APA. <u>See</u> Doc. No. 63, p. 44. In addition, the Defendants contend the Plaintiffs' claims are not ripe, nor do they have standing to challenge the guidance. <u>Id.</u>

The Administrative Procedure Act states, "[f]inal agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." <u>See</u> 5 U.S.C. § 704. Agency action under the APA is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An agency action is "final" when (1) it "mark[s] the consummation of the agency's decision making process," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." <u>Bennett v. Spear</u>, 520 U.S. 154, 177–78 (1997). The Plaintiffs seek to characterize two slideshows as adjudications, while the Defendants characterize the slideshows as guidance.

Regardless of the persuasive diction chosen by either party, the slideshow is not final agency action. The sub-caption of each slideshow articulates, "this list is **representative** of how the ATF will apply the definition of 'rifle' to firearms that are equipped with a 'stabilizing brace.'" See 6-1, 7-1. The slideshow forecasts the ATF's position on particular weapons as representations on their position. Cal. Cmtys. Against Toxics v. EPA, 934 F.3d 627, 638 (D.C. Cir. 2019) (finding no final agency action where agency memo merely "forecasted" a "definitive" statutory interpretation but "had no direct and appreciable legal consequence"). Accordingly, the Court finds the slideshows do not constitute final agency action. [2] Thus, the Court lacks jurisdiction to review them. Sierra Club v. United States Army Corps of Engineers, 446 F.3d 808, 811–15 (8th Cir. 2006).

Taken together, the Plaintiffs have not shown they are entitled to the extraordinary remedy of preliminary injunctive relief at this early stage of the proceedings. The Court finds they have not, at this preliminary stage, demonstrated a substantial likelihood of success on the merits. As a failure to demonstrate a likelihood of success on the merits as to at least one claim bars a TRO or preliminary injunction, the Court declines to analyze the other preliminary injunction factors at this early stage. Parson v. Alcorn, 157 F.Supp.3d 479, 491 (E.D. Va. 2016); Lockheed Martin Corp. v. United States, 124 Fed. Cl. 709, 730; Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be [denied].").

---

[2] Even if the Court were to find the slideshows were final agency action, they are nevertheless not unlawful, nor do they establish that the Final Rule is arbitrary.

## IV.    <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  For the reasons set forth above, the Plaintiff's motion for preliminary injunction (Doc. No. 7) and motion for oral argument (Doc. No. 8) are **DENIED**.


**IT IS SO ORDERED.**

Dated this 12th day of September, 2023.


*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court