UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE №: 8:23-cv-223

JOSIAH COLON, *et al.*,

> *Plaintiffs*,

v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

> *Defendants*.

_____/

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' CROSS-**
**MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Before the Court is a straightforward constitutional question under *Bruen*: whether the Government may impose felony-level, prior-restraint-type burdens on ordinary citizens based on the barrel-length of medium-sized firearms[1]—particularly where the affected arms are widely possessed for lawful purposes. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

Plaintiffs moved for summary judgment on Count I, which challenges the constitutionality of the underlying statutory scheme—not merely the now-vacated Final Rule. (Doc. 64 at 5). Defendants respond with a cross-motion that seeks (i) dismissal for lack of standing, (ii) summary judgment on the merits, and (iii) dismissal as moot of any claims directed specifically to the vacated Rule. (Doc. 69 at 19; Doc. 69 at 39–41). That cross-motion should be denied as to Count I, and Plaintiffs' motion should be granted.

First, Plaintiffs have standing. The Court has already held that the Individual Plaintiffs established Article III standing, and that 2nd Amendment Armory may proceed on a *jus tertii* standing theory on behalf of its customers. (Doc. 47 at 17–23). Defendants' effort to relitigate justiciability at summary judgment ignores Plaintiffs' sworn declarations and Defendants prior admissions that the operative legal consequences "flow directly from the

---

[1] It is undisputed that the smallest, most concealable, most prolifically used class of firearms: handguns, are at the "core" of Second Amendment protection. *Heller* 554 U.S. 570.

2

NFA" and that the Final Rule did not prohibit possession beyond what was prohibited by the NFA itself. (Doc. 40 at 32-35). Those admissions independently reinforce a credible threat of prosecution and the ongoing chilling of Plaintiffs' past and intended conduct.

Second, Count I is not moot. Defendants' mootness argument turns on vacatur of the Final Rule. (Doc. 69 at 39–41). But Plaintiffs' Count I challenges the constitutionality of the underlying statute and Defendants' asserted enforcement authority independent of the Rule. (Doc. 64 at 5). Defendants' own position—that the statute allows prosecution of brace-equipped firearms absent the Rule—forecloses any suggestion that vacatur erased the controversy. (Doc. 22 at 15-21); (Doc. 40 at 32- 35).

Third, on the merits, Defendants cannot carry their burden under *Bruen*. Once Plaintiffs show that the Second Amendment's plain text covers their conduct, the Government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. Defendants' short-lived cited history—largely public-carry/affray restrictions traceable to the Statute of Northampton and revenue or safety regulations of a materially different kind—are neither from the constitutionally relevant time period nor do they supply a relevantly similar analogue for criminalizing ordinary possession of a firearm based on barrel length or imposing a federal registration-and-preapproval regime as a

3

condition of exercising the right. (Doc. 69 at 28–38). Because Defendants cannot satisfy Bruen's required analogue showing, Plaintiffs are entitled to declaratory and injunctive relief on Count I.

Accordingly, the Court should deny Defendants' cross-motion and grant Plaintiffs' motion for summary judgment.

## ARGUMENT

### I.   DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION SHOULD BE DENIED

Defendants seek dismissal on the theory that Plaintiffs have not carried their burden to establish Article III standing and that the Court therefore lacks jurisdiction. (Doc. 69 at 18–21). That request should be denied. At the summary-judgment stage, standing "must affirmatively appear in the record," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). That is clearly satisfied here through record evidence and—critically—Defendants' own admissions in this case about the scope of the NFA's operative legal consequences. (Doc. 30 at 2–5; Doc. 32 at 1–4; Doc. 64-1 at 1–2; Doc. 40 at 32–33, 35, 38) *see also Jacobs v. The Florida Bar* 50 F.3d 901 at 904 (11th Cir. 1995) (Relying on pleadings and party positions to determine appellants have standing).

### A. Plaintiffs have Article III Standing

To establish standing, Plaintiffs must show injury in fact, traceability, and redressability. *Lujan*, 504 U.S. at 560–61. And because Plaintiffs seek

4

prospective declaratory and injunctive relief, they must show an ongoing injury or a sufficiently imminent and credible threat of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–61 (2014). Plaintiffs satisfy those requirements.

### i. The Individual Plaintiffs have concrete injuries and face a credible threat of enforcement.

Defendants assert that "most Plaintiffs submitted no evidence whatsoever" and instead relied only on allegations. (Doc. 69 at 19). That is incorrect. The record contains sworn affidavits from Colon, Kling, and Mele (Doc. 30 at 2–5), a sworn affidavit from Martin/2nd Amendment Armory (Doc. 32 at 1–4), and a sworn affidavit from Mele submitted with Plaintiffs' summary-judgment motion describing a present, concrete inability to use and repair his firearm without exposure to felony liability under the Government's asserted reading of the NFA. (Doc. 64-1).

Those sworn statements are not abstract or speculative. Mele attests that his firearm is currently unusable and that, absent relief, repairing and/or configuring it would expose him to felony liability. (Doc. 64-1). That is present injury. Cf. *Lujan*, 504 U.S. at 564. Colon and Kling attest to possession of the brace-equipped firearms described in the case and to concrete constraints on their conduct. (Doc. 30 at 2–4). The government has maintained its position that the challenged statute itself always enabled the prosecution of Plaintiffs

for simple possession of these firearms, and the rule's vacatur does nothing to change that. On this, as to Mele, the present injury is obvious: the NFA denies him use of the very firearm he depends upon for self-defense unless he first seeks and obtains permission from Defendants, thereby accepting material limitations on his ability to alienate and travel with his firearm. As to the other individual Plaintiffs, the government has consistently represented that the challenged provisions proscribe the firearms they presently own.  These are precisely the kinds of concrete burdens and chilled conduct that support standing where plaintiffs "intend[] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt*, 442 U.S. at 298; *Susan B. Anthony List*, 573 U.S. at 159–61.

Defendants' litigation admissions confirm the credibility of the enforcement threat and the non-speculative nature of Plaintiffs' injuries. At the preliminary-injunction hearing, the Government confirmed that the "penalties all flow directly from the NFA itself," and that the rule "is just explaining how ATF will apply the NFA." (Doc. 40 at 35). The Government also represented that, even before the Final Rule, ATF had classified some brace-equipped firearms as SBRs subject to the NFA, albeit inconsistently. (Doc. 40 at 33). Those admissions independently demonstrate that Plaintiffs' feared legal consequences are not contingent on the rule and are not conjectural.

6

*ii.   2nd Amendment Armory has standing in its own right and third-party standing to assert its customers' rights.*

Separate and independently sufficient standing exists through 2nd Amendment Armory. Vendors and businesses may, in appropriate circumstances, assert the rights of customers who face impediments to suit, where the vendor has suffered injury in fact, has a close relationship with the third parties, and there is some hindrance to the third parties' ability to protect their own interests. *Craig v. Boren*, 429 U.S. 190, 195 (1976); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684 n.4 (1977); Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1041–44 (11th Cir. 2008).

This Court has already applied those principles here and held that "2nd Amendment Armory … demonstrated *jus tertii* standing for its customers," recognizing both the vendor–customer relationship and the hindrance posed by privacy and retaliation concerns. (Doc. 47 at 18–23). Nothing in Defendants' filing justifies revisiting that determination.

*iii.   Traceability and redressability are satisfied for Count I and the prospective relief sought.*

Plaintiffs' injuries are traceable to Defendants' asserted enforcement posture under the NFA and the legal consequences Defendants contend attach to possession or the intended configuration/repair of Plaintiffs' firearms. (Doc. 40 at 33-35). The requested declaratory and injunctive relief would redress those injuries by eliminating the threat of felony prosecution and associated

7

compliance burdens for Plaintiffs' intended course of conduct. See *Utah v. Evans*, 536 U.S. 452, 464 (2002).

### B. Count I is not moot.

Defendants also invoke mootness based on the vacatur of the Final Rule. (Doc. 69 at 39–41). But Count I is not predicated on the continued existence of that rule; it challenges the constitutionality of Defendants' asserted statutory authority and felony-backed regulatory regime tied to barrel length and classification under the NFA. (Doc. 64 at 5). Moreover, Defendants' own admissions that the operative obligations and penalties "flow directly from the NFA itself" foreclose the suggestion that vacatur extinguished the live controversy as to Count I. (Doc. 40 at 35). *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (a case becomes moot only when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome").

## II.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT I UNDER *BRUEN*

The Government asks this court to excuse it from carrying its burden under *Bruen* by pointing to unpublished and pre-*Bruen* caselaw, but the Second Amendment demands more. Under *Bruen*, once the Second Amendment's plain text covers Plaintiffs' conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. **Only then may a court conclude that the**

8

**individual's conduct falls outside the Second Amendment's 'unqualified command'"** *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). The government has not cited a single authority binding on this Court excusing it from its burden.

Arguing in the alternative, Defendants attempt to satisfy that burden by assembling a spattering of short-lived (i) carry/affray authorities traceable to the Statute of Northampton, (ii) trade and inspection rules directed at gunpowder and commerce, (iii) militia inspection or survey practices, and (iv) assorted taxes and seller recordkeeping rules. (Doc. 69 at 20–38). While the government needn't find a "dead ringer" *United States v. Rahimi*, 602 U.S. 680 at 692 (2024), historical materials must still be "well-established and representative" to serve as a historical analogue. *Bruen*, 597 U.S. at 30. The government's asserted materials are simply not "relevantly similar" to the NFA's felony-backed, prior-restraint-style regime for mere possession of an entire class of arms. *Id.*

### A. The Second Amendment's plain text covers Plaintiffs' proposed conduct.

Count I concerns the possession and ordinary lawful use of bearable arms. The Second Amendment protects possession for lawful purposes, including defense. *District of Columbia v. Heller*, 554 U.S. 570, 628–29 (2008). And the Supreme Court has repeatedly rejected arguments that a weapon is

unprotected merely because the government deems it "dangerous," emphasizing that arms "in common use" for lawful purposes are protected. *Id.* at 627; *Caetano v. Massachusetts*, 577 U.S. 411, 411–12 (2016) (*per curiam*). Plaintiffs' record evidence and the pleadings establish that the challenged barrel-length regime targets arms widely possessed and used for lawful purposes, and that Plaintiffs face concrete burdens and felony exposure based on Defendants' asserted statutory interpretation. (Doc. 64 at 5–10; Doc. 64-1 at 1–2; Doc. 1 ¶¶ 63–75).

Precisely as Plaintiffs anticipated (Doc. 64 at 11-19), Defendants try to reframe the inquiry as Plaintiffs seeking protection for "dangerous and unusual weapons" and cite the Supreme Court's recognition that the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (Doc. 69 at 28) (quoting *Heller*, 554 U.S. at 626). That strawman is not before this Court. Under *Bruen*, Defendants cannot win through *ipse dixit* labeling of arms as "dangerous and unusual" and then substituting inapposite, reconstruction-era sources that regulate public terrorizing conduct for the required historical analogue to the specific modern burden. *Bruen*, 597 U.S. at 29–30.

10

## B. Defendants' proffered historical tradition is neither longstanding nor analogous.

Defendants' core move is to argue that, because historical law regulated "going armed," "dangerous and unusual weapons," and certain firearms-related commerce, the NFA's barrel-length-based felony regime is constitutional. (Doc. 69 at 28–38). That is not the showing *Bruen* requires. The government's attempt to reverse-engineer the NFA by reference to the very same inapposite regulations it relied upon on at the preliminary injunction stage is precisely because there *is* no historical analogue. The government's asserted interest are the classic ones of crime prevention and public safety, but

> when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.

*Bruen* 597 U.S. at 26-27. Defendants' cited materials show only that, over the course of founding-era legal history, we have addressed the interests cited by the government in just about every way *except* the type of prohibition the government here defends.

### i. *Northampton/affray authorities address terrorizing public carry, not possession of common arms.*

Defendants' Northampton-line authorities describe prohibitions on going armed "to the fear or terror" of the public and treat such conduct as an offense

11

against the peace. (Doc. 69 at 28; Doc. 69-2 at 10). As Defendants present them, these sources regulate manner of public carriage—often tied to "offensively" going armed and the public terror element—not the simple possession of a class of arms, and certainly not a felony-backed registration-and-preapproval scheme for ordinary possession. (Doc. 69 at 28–29; Doc. 69-2 at 10).

That mismatch is dispositive under *Bruen*. A carry/affray rule aimed at terrorizing conduct in public does not supply a relevantly similar tradition for criminalizing mere possession (including in the home) triggered by a 15.999" barrel. *Bruen*, 597 U.S. at 29 (requiring similarity in "how and why" the regulation burdens the right).

> ii. *Gunpowder "inspection" and trade rules are commerce and safety measures, not analogues to a possessory felony.*

Defendants also cite historical licensing and inspection of gunpowder stores. (Doc. 69 at 22). The materials Defendants rely on concern appointment of gunpowder inspectors, regulate the sale and exportation of gunpowder, and forfeitures for knowingly selling "bad powder." (Doc. 69-3 at 20-23). These are trade and product-safety rules directed at gunpowder—an explosive commodity—rather than a tradition of criminalizing possession of ordinary bearable arms based on barrel length, and they do not resemble the "how" of the NFA's criminal-registration regime.

The same is true of Defendants' gunpowder licensing examples. (Doc. 69 at 22, 24). A requirement that "vendors of gunpowder shall pay a license fee" (Doc. 69-4 at ATF397) is not a historical analogue for felony liability attached to possession of an arm absent federal registration, especially where the government has abandoned any conceivable revenue raising purpose in setting the tax for the items at issue at $0. 26 U.S.C. §5811(a)(2).

### iii. Militia surveys, muster inspections, and "proved barrel" laws are qualitatively different from a modern federal registration scheme conditioning lawful possession.

Defendants' "how" argument emphasizes "registration, survey, and inspection" practices and "proved" barrel requirements. (Doc. 69 at 20–21). But the historical items they cite fall into two different categories that do not do the work Defendants need:

First, militia inspections and surveys were designed to ensure readiness and that citizens were adequately armed—not to impose a federal prior restraint on possession or to convert ordinary possession into a felony absent registration. (Doc. 69 at 20–21).

Second, "proved barrel" laws are quality-control rules for barrels manufactured for sale, with marking and fees to ensure safe condition. (Doc. 69 at 21; Doc. 69-3 at ATF182). Again, a commercial inspection/marking requirement for product safety is a measure to *encourage* safe and effective

13

arms, not at all relevantly similar to the NFA's prohibitory barrel-length-based possession felony and continuing restrictions on transfer and transport.

> ### iv.  *Historical taxes and seller recordkeeping do not justify felony-backed possession restrictions keyed to barrel length.*

Defendants also gesture at historical taxes and seller registers as support for NFA "taxation and registration." (Doc. 69 at 21, 34–35). Even accepting those examples at face value, revenue measures and retail recordkeeping are not a tradition of criminalizing mere possession of an arm based on barrel length. They are not relevantly similar in "how" (they do not impose felony-backed federal preclearance for possession) or "why" (they typically serve revenue, commercial regulation, or narrow public-safety aims). Bruen, 597 U.S. at 29. Similarly, the revenue-raising effect is completely absent here, where the challenged items are taxed at $0. 26 U.S.C. §5811(a)(2).

## C. Defendants' reliance on "objective licensing requirements" is misplaced.

Defendants contend that the NFA's registration procedures are comparable to "objective licensing requirements" such as fingerprinting and background checks, citing Justice Kavanaugh's *Bruen* concurrence and lower-court cases. (Doc. 69 at 20). But *Bruen*'s discussion of licensing concerned public-carry permitting regimes and emphasized that "shall-issue" systems must operate through objective criteria and may not be administered to deny ordinary citizens their rights as opposed to "may issue" regimes. *Bruen*, 597

14

U.S. at 79–81 (Kavanaugh, J., concurring); *id*. at 38 n.9. It did not hold that the government may impose a felony-backed registration regime on mere possession of a class of arms defined by barrel length, nor did it dilute *Bruen*'s requirement that the government must prove a relevantly similar historical analogue for the specific modern burden. *Id*. at 24, 29–30.

### D. Defendants therefore cannot meet their Bruen burden, and they are not entitled to judgment as a matter of law.

At summary judgment, Defendants must show that the NFA's barrel-length-based felony regime is consistent with historical tradition. *Bruen*, 597 U.S. at 24. Their purported analogues instead regulate (i) terrorizing the public, (ii) commerce and safety rules, and (iii) militia readiness and product-quality inspection. (Doc. 69 at 20–38; Doc. 69-2 at 10; Doc. 69-3 at 5-22). Those sources cannot reasonably be called analogous to a prohibitory regime based on barrel length. Accordingly, Defendants' motion for summary judgment on Count I should be denied.

### III.   DEFENDANTS' CITED CASES DO NOT CONTROL THIS *BRUEN* CHALLENGE, AND ARE DISTINGUISHABLE

Defendants' cross-motion leans heavily on two criminal decisions— *United States v. Wilson* and *United States v. Robinson*—to argue that *Miller* "remains binding" and therefore Count I fails as a matter of law. (Doc. 69 at 23–25). That contention overstates both what those cases, and *Miller* itself

15

decided; disregards the distinct procedural posture here; and, in any event, does not carry Defendants' burden under *Bruen* in this posture.

### A. *Miller* did not hold what Defendants suggest.

Plaintiffs anticipated Defendants' invocation of *Miller* in the underlying motion, analyzing what *Miller* actually held and the materially different circumstances before this Court and the *Miller* court. (Doc. 64 at 11-16). Defendants responded by simply asserting that *Miller* held regulation of short-barreled shotguns consistent with the Second Amendment. This cannot be gleamed from anywhere in the opinion. *U.S. v. Miller* 307 U.S. 174 (1939) ("we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense."). Indeed, *Miller* noted simply that sufficient materials were not before the Court, hence its order remanding the case for "further proceedings[,]" where the surviving defendant ultimately accepted a plea. *Id.* at 183. *See also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case.").

Central to *Miller*, at least as far as what *Heller* took from it was protection of those arms "in common use **at the time**." *Heller* 554 U.S. at 570 (emphasis added). Whatever the case was in 1939, materials before this Court

16

clearly establish the commonality and lawful utility of the arms at issue in this matter. *See* (Doc. 64 13-17). It may be the case that handguns were uncommon at the founding, but they were "overwhelmingly chose[n] for the lawful purpose of self-defense" by 2008. *Heller*, 554 U.S. at 572. The same is true for the medium-sized rifles and pistols threatened here.[2] To be sure, *Heller*, in invoking *Miller* for its limited holding, did not foreclose anything. *Id*. at 365 (explaining the need to "expound upon the historical justifications for the exceptions we have mentioned **if and when** those exceptions come before us.") (emphasis added).

### B. The authorities the government relied upon do not control the outcome.

This case presents a civil claim for declaratory and injunctive relief on a record directed to Plaintiffs' conduct, injuries, and the constitutionality of Defendants' asserted position. By contrast, *Wilson* and *Robinson* arose as criminal prosecutions under 26 U.S.C. § 5861(d), litigated under the constraints of criminal procedure, stipulations, and the particular issues preserved and presented on appeal. See *United States v. Robinson*, 2025 WL

---

[2] For contextual support on the breadth and routinization of NFA firearms, Plaintiffs also note recent reporting that ATF has processed as many as 150,000 applications for NFA firearms in a single day, with approximately 1 million applications occurring in the first week of 2026. *See* National Shooting Sports Foundation, New Year Buying Surge Shows 2026 Could Be The Year Of Suppressors (Jan. 6, 2026), https://www.nssf.org/articles/new-year-buying-surge-shows-2026-could-be-the-year-of-suppressors/.

870981, at *1–2 (11th Cir. Mar. 20, 2025) (unpublished); *United States v. Wilson*, 979 F.3d 889, 896–97 (11th Cir. 2020) (criminal appeal challenging conviction and sentence for unregistered sawed-off shotgun).

Even accepting those cases as persuasive or precedential on the narrow questions they resolved, Defendants still cannot obtain summary judgment here without satisfying Bruen's historical-tradition requirement as applied to the conduct and arms at issue in this case. Neither *Wilson* nor *Robinson* supplies the analogical showing that *Bruen* demands.

> ### i. *Robinson is unpublished, nonprecedential, and its reasoning is materially limited.*

Defendants treat *Robinson* as if it conclusively resolves the *Bruen* question for all Second Amendment challenges. (Doc. 69 at 23–25). It does not.

First, *Robinson* is an unpublished, non-argument-calendar decision and is not binding precedent. Robinson, 2025 WL 870981, at 1; 11th Cir. R. 36-2.

Second, *Robinson* is materially constrained by its own reasoning: the panel concluded it was "bound" by *Miller* and prior circuit decisions applying *Miller*, and on that basis it did not reach (and thus did not adjudicate) the defendant's proffered arguments in any meaningful way. As already discussed, the question *Robinson* answered: whether *Miller* was still good law, is not operative. *Miller* simply did not hold what Defendants suggest it did. This Court is not bound to follow an unpublished opinion citing a case for a holding

18

that never existed. *Bruen* did not exempt the acts at issue from the Second Amendment's "unqualified command," and thus the government must still carry its burden.

### ii.   *Wilson predates Bruen and does not resolve the Bruen issue presented here.*

Defendants also cite *Wilson*. (Doc. 69 at 24 (quoting Wilson, 979 F.3d at 903)). But *Wilson* does not decide the question before this Court for at least three reasons.

First, *Wilson* is a pre-*Bruen* decision. *Bruen* repudiated the means-end scrutiny methodology that dominated Second Amendment litigation for over a decade and replaced it with a historical-tradition test that places the burden squarely on the government once the Second Amendment's text covers the conduct. *Bruen*, 597 U.S. at 24, 29–30. To the extent *Wilson* reflects pre-*Bruen* doctrinal assumptions or treats *Miller*'s non-holding as dispositive without the analogical inquiry *Bruen* requires, *Wilson* does not supply the analysis Defendants must carry on summary judgment in this case.

Second, *Wilson* arose in a fact-bound criminal appeal involving a sawed-off shotgun, and the panel's discussion of the Second Amendment appears while rejecting a "frivolous" admiralty challenge to the district court's subject-matter jurisdiction and authority to adjudicate the prosecution. *Wilson*, 979 F.3d at 903. That posture is worlds apart from Plaintiffs seeking merits

19

adjudication under the Supreme Court's current Second Amendment framework.

Third, even if *Wilson* has precedential force, it cannot amend *Miller* nor foreclose *Bruen*'s application.

## IV. PLAINTIFFS ARE ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF.

Because Plaintiffs have established standing and because Defendants cannot justify the challenged regime under *Bruen*, Plaintiffs are entitled to summary judgment on Count I and to declaratory and injunctive relief preventing enforcement of the challenged statutory provisions against Plaintiffs' conduct. Plaintiffs seek permanent relief tailored to their injuries and the constitutional violation.

## CONCLUSION

For the foregoing reasons, Defendants' Cross-Motion for Summary Judgment and Motion to Dismiss should be denied. (Doc. 69). Plaintiffs' Motion for Summary Judgment should be granted as to Count I. (Doc. 64). The Court should enter declaratory and permanent injunctive relief.

Respectfully submitted,

DATED: January 9, 2026

20

/s/Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 9, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Matthew Larosiere
Matthew Larosiere