**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |
|---|---|
| JOSIAH COLON, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*, <br><br> *Defendants*. | Case No. 8:23-cv-223 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION TO
DISMISS AND FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................... 1

**ARGUMENT** ........................................................................................ 1

I.     Plaintiffs lack standing to assert their Second Amendment claim. ................... 1

II.    The NFA does not violate the Second Amendment. ...................................... 4

    A. Binding precedent precludes Plaintiffs' challenge...................................... 4

    B. The NFA is a presumptively constitutional licensing regime. .................... 7

    C. The NFA is consistent with the historical tradition of firearms
      regulation. ............................................................................................... 9

III.   Plaintiffs' claims challenging ATF's Rule should be dismissed as moot........ 13

IV.    Plaintiffs are not entitled to injunctive relief. ............................................. 13

**CONCLUSION** ................................................................................. 13

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
451 F.3d 1257 (11th Cir. 2006)......................................................................................1

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ....................................................................................................5, 9

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ........................................................................................................13

*Johnson v. United States*,
576 U.S. 591 (2015) ..........................................................................................................9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................2, 3

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ..........................................................................................................4, 8

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
993 F.2d 800 (11th Cir. 1993)..........................................................................................3

*Rush v. United States*,
No. 24-1259, --- S. Ct. ----, 2025 WL 3620422 (Mem. Dec. 15, 2025) ..........................6

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ..........................................................................................................2

*TocMail, Inc. v. Microsoft Corp.*,
67 F.4th 1255 (11th Cir. 2023)..........................................................................................2

*United States v. Brabham*,
2024 WL 3165467 (M.D. Pa. June 24, 2024) .................................................................12

*United States v. Chan*,
2024 WL 4028019 (D. Hawaii Sept. 3, 2024) .................................................................9

*United States v. Dangleben*,
2023 WL 6441977 (D.V.I. Oct. 3, 2023).........................................................................12

*United States v. Hernandez,*
   159 F.4th 425 (5th Cir. 2025)......................................................................................4

*United States v. Miller,*
   307 U.S. 174 (1939) ...............................................................................................4, 5

*United States v. Padgett,*
   2023 WL 3483929 (D. Alaska Jan. 4, 2023) .................................................................12

*United States v. Peterson,*
   161 F.4th 331 (5th Cir. 2025)......................................................................................8

*United States v. Rahimi,*
   602 U.S. 680 (2024) .....................................................................................7, 9, 10, 11

*United States v. Robinson,*
   2023 WL 12066735 (M.D. Fla. Feb. 9, 2023) ...............................................................5

*United States v. Robinson,*
   2025 WL 870981 (11th Cir. Mar. 20, 2025),
   *petition for cert. denied,* --- S. Ct. ----, 2025 WL 3620471 (Mem. Dec. 15, 2025) .....4, 5

*United States v. Rojas,*
   2026 WL 84221 (N.D. Ala. Jan. 12, 2026).....................................................................4

*United States v. Saleem,*
   2024 WL 5084523 (4th Cir. Dec. 12, 2024) .................................................................5

*United States v. Wilson,*
   979 F.3d 889 (11th Cir. 2020)......................................................................................5

**STATUTES**

26 U.S.C. § 5822 ..............................................................................................................8

26 U.S.C. § 5843 ............................................................................................................13

**RULES**

11th Cir. R. 36-2, 36-3, I.O.P. 5, 6 ...............................................................................7

**OTHER AUTHORITIES**

ATF, *Current Processing Times*,
   https://perma.cc/5FZW-3U9C .................................................................................... 8

**INTRODUCTION**

Since 1934, the National Firearms Act ("NFA") has regulated the manufacturing, transfer, and possession of weapons that Congress deemed particularly dangerous, including short-barreled rifles and shotguns. As demonstrated in Defendants' opening brief, the NFA's regulation of these weapons neither facially violates the Second Amendment, nor violates the Second Amendment as applied to the Plaintiffs in this case. Plaintiffs have no persuasive response to Defendants' arguments, and instead, emphasize novel theories that sidestep the binding Supreme Court and Eleventh Circuit precedent that controls this case.

Separately, Plaintiffs have failed to carry their evidentiary burden to establish Article III standing to challenge the NFA, have conceded that their claims challenging ATF's final rule are moot, and have not shown they are entitled to injunctive relief. This Court should therefore grant Defendants summary judgment on Plaintiffs' Second Amendment challenge to the NFA and dismiss the rest of this case as moot.

**ARGUMENT**

**I.     Plaintiffs lack standing to assert their Second Amendment claim.**

Even in reply, Plaintiffs have failed to marshal evidence in the record sufficient to carry their burden to establish standing at the summary judgment stage. As Defendants have already explained, at summary judgment, standing "cannot be inferred argumentatively" but "must affirmatively appear in the record." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1276 (11th Cir. 2006). A plaintiff cannot

rest upon "mere allegations" and must put forth "specific facts" by "affidavit or other evidence" that demonstrate each element of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). Vague or conclusory assertions of harm will not suffice, *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1264 (11th Cir. 2023), and neither will speculation, *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

To start, as already explained, Plaintiffs provided only one affidavit at summary judgment that is vague, conclusory, speculative, and does not establish actual or imminent injury. *See* Defs.' Opp. and Cross-MJS at 9-10, ECF No. 69 ("Defs.' Br.").

Plaintiffs attempt to remedy that deficiency now by pointing to other evidence in the record. First, Plaintiffs gesture to the affidavits submitted by the named Plaintiffs in support of their preliminary injunction motion. *See* Pls.' Combined Opp. and MSJ Reply at 5, ECF No. 73 ("Pls.' Reply") (citing ECF Nos. 30, 32). But no facts in those affidavits establish standing: the individual Plaintiffs state merely that they "possess" the "AR-style pistols described in the complaint." *See, e.g.*, ECF No. 30 at 2. And the affidavit submitted by Plaintiffs Ted Martin and 2nd Amendment Armory states only that Mr. Martin has "in [his] own possession, and in the shop's possession, stabilizing braces," and he had "removed the braces from the firearms in [their] possession." ECF No. 32 at 3. These statements fail to establish that any Plaintiff possesses a firearm subject to the NFA, and even if they did, these statements do not describe any actual or imminent injury suffered by one or more of the Plaintiffs as a result.

Plaintiffs also cite the Court's decision on their preliminary injunction motion, which concluded that "[a]t this preliminary stage," 2nd Amendment Armory had

2

standing to sue on behalf of its customers. Order at 23, ECF No. 47; Pls.' Reply at 7. There, however, the Court applied a different evidentiary standard than the one applicable at summary judgment. *Compare* Order at 15 (assessing standing "according to the sufficiency of the allegations within the pleadings") *with Lujan*, 504 U.S. at 561 (explaining at summary judgment "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" (quotations omitted)). And in concluding that Plaintiffs had standing, the Court relied only upon the allegations of the complaint and the arguments in Plaintiffs' supplemental brief, and did not cite Plaintiffs' affidavits. *See* Order at 16-23. It is therefore necessary for the Court to determine whether Plaintiffs have satisfied the summary judgment standard. Plaintiffs have not done so with respect to either the individual Plaintiffs or 2nd Amendment Armory. To address 2nd Amendment Armory in particular though, Plaintiffs submitted no evidence establishing that 2nd Amendment Armory has itself suffered an injury in fact sufficient for standing. And independently, Plaintiffs submitted no evidence establishing that the "relationship between" 2nd Amendment Armory and its customers is such that it is "nearly as effective a proponent" of its customers' rights as the customers themselves, or that "there is some obstacle" to the customers suing on their own behalf. Order at 18 (quoting R*egion 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 809 (11th Cir. 1993)). Thus, Plaintiffs also have not established third-party standing.

Lastly, Defendants' statements about how the NFA functioned with the now-vacated ATF final rule do nothing to establish that Plaintiffs are suffering actual or

3

imminent concrete injury. Pls.' Reply at 6. Defendants' argument is not that the NFA has no effect, or does not impose penalties—it's that Plaintiffs have not submitted evidence addressing their individual circumstances that establishes they fall within the statute's ambit and are actually or imminently suffering a concrete injury as a result.

## II.   The NFA does not violate the Second Amendment.

### A. Binding precedent precludes Plaintiffs' challenge.

Though Plaintiffs would prefer to gloss over the issue, they cannot escape that the Supreme Court's decision in *United States v. Miller*, 307 U.S. 174, 178 (1939), controls this case. Courts have unanimously concluded that *Miller* remains binding precedent, even in the wake of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). *See, e.g., United States v. Robinson*, 2025 WL 870981, at *4 (11th Cir. Mar. 20, 2025) ("*Bruen*—like *Heller*—did not overturn all prior caselaw addressing the Second Amendment. . . . [W]e conclude that *Miller* remains binding as the Supreme Court has not overturned it."), *petition for cert. denied*, --- S. Ct. ----, 2025 WL 3620471 (Mem. Dec. 15, 2025); *United States v. Hernandez*, 159 F.4th 425, 427 n.1 (5th Cir. 2025) ("[Defendant] argues that the Supreme Court's statements in *Heller* and *Miller* that the Second Amendment does not protect a right to possess short-barreled shotguns are merely *dicta* and . . . [*Bruen*] implicitly overruled them. But we are bound by the Court's explications of law, whether dicta or not. . . . And we lack the authority to recognize 'implicit' overruling by the Court of its precedent."); *United States v. Rojas*, 2026 WL 84221, at *1 (N.D. Ala. Jan. 12, 2026) ("[E]very Circuit Court that has considered the

4

issue, including the Eleventh Circuit, has rejected that the Supreme Court's decision in [*Bruen*] overruled *Miller*." (collecting cases)). Only the Supreme Court has the power "to overturn its own precedent and to limit its own precedent's applicability," but as the Eleventh Circuit recently concluded, the Supreme Court has not overturned or limited *Miller*. *Robinson*, 2025 WL 870981, at *5. And because *Bruen* did not disturb *Miller*, pre-*Bruen* Eleventh Circuit precedent relying on *Miller*—like *United States v. Wilson*, 979 F.3d 889 (11th Cir. 2020)—has not been overruled either, *see id.* at 903.[1]

Contrary to Plaintiffs' reading, courts have consistently and correctly interpreted *Miller* to stand for the proposition that the Second Amendment does not guarantee the right to possess short-barreled rifles and shotguns. The Supreme Court itself explained that "[w]e therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008); *see also United States v. Robinson*, 2023 WL 12066735, at *4 (M.D. Fla. Feb. 9, 2023) ("[T]his Court is bound by Supreme Court precedent to hold that, by its 'plain text,' the Second Amendment does not cover short-barreled rifles and, if it did, the NFA's registration requirement for short-barreled rifles is consistent with the historical regulation of firearms." (citing *Miller*, 307 U.S. at 177-82)); *United States v. Saleem*, 2024 WL 5084523, at *1 (4th Cir. Dec. 12, 2024) ("[W]e

---

[1] Though Plaintiffs contend *Wilson* is not binding because it was decided pre-*Bruen*, and "*Bruen* repudiated the means-end scrutiny methodology," Pls.' Reply at 19, *Wilson* did not apply a means-end scrutiny methodology. Instead, *Wilson* simply stated that *Miller* already resolved the Second Amendment issue. *See* 979 F.3d at 903. Therefore, so long as *Miller* remains binding, so does *Wilson*.

5

know from Supreme Court precedent that short-barreled shotguns . . . are not in common use for a lawful purpose" because "'*Miller* stood for the proposition 'that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.'"). Though Plaintiffs advocate for a different reading of *Miller*, they cannot cite a single case that has adopted their reading in the 87 years since *Miller* was decided. *See* Pls.' Mot. for Summ. J. at 11-12, ECF No. 64 ("Pls.' Mot."); Pls.' Reply at 16-17.

That *Miller* remains binding and has been properly interpreted by the lower courts is only confirmed by the fact that, last term, the Supreme Court denied two petitions for certiorari that squarely presented the issue of whether the NFA's regulation of short-barreled rifles violates the Second Amendment. *See Robinson*, No. 25-5150, 2025 WL 3620471 (denying petition for writ of certiorari); *see Robinson v. United States*, No. 25-5150, Pet. for Writ of Certiorari at i (question presented was "[w]hether federal criminal punishment of the possession of an unregistered short-barreled rifle violates the Second Amendment"); *Rush v. United States*, No. 24-1259, --- S. Ct. ----, 2025 WL 3620422 (Mem. Dec. 15, 2025) (denying petition for writ of certiorari); *Rush v. United States*, No. 24-1259, Pet. for Writ of Certiorari at i (question presented was "[w]hether the Second Amendment secures the right to possess unregistered short-barreled rifles that are in common use for lawful purposes").

Plaintiffs suggest that this Court should simply brush aside *Robinson* because it is unpublished. *See* Pls.' Reply at 18-19. But there is no basis for the Court to ignore a

6

well-reasoned, 20-page decision by an Eleventh Circuit panel on the same issues in this case. At the very minimum, the decision should be highly persuasive to this Court. Nor is it any surprise that the decision was not published, when it held that the court was bound by existing Supreme Court and Eleventh Circuit precedent and did not make new precedent. *See* 11th Cir. R. 36-2, 36-3, I.O.P. 5, 6 (establishing court "policy" of minimizing the volume of published opinions and explaining opinions that "have no precedential value are not published").

Plaintiffs also attempt to distinguish *Robinson* and *Wilson* as criminal appeals. *See* Pls.' Reply at 17-19. Plaintiffs, however, have brough a facial challenge to the statute, and accordingly, it is their burden to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted). Therefore, prior decisions upholding the constitutionality of the NFA—even under the circumstances of those cases—defeats Plaintiffs' facial challenge. Plaintiffs have also all but abandoned their as-applied challenges, having provided no response to Defendants' arguments. *See* Defs.' Br. at 25-28.

To conclude, this case is controlled by binding precedent, and this Court need look no further than *Miller* to decide it.

**B. The NFA is a presumptively constitutional licensing regime.**

Plaintiffs also contend that Defendants' comparison of the NFA's registration procedures to the objective licensing requirements that the Supreme Court endorsed in *Bruen*—like fingerprinting, a background check, and a mental health records

7

check—is misplaced. *See* Pls.' Reply at 14-15; Defs.' Br. at 20; *see also Bruen*, 597 U.S. at 38 n.9; *id.* at 70 (Kavanaugh, J., concurring). Not so.

Notably, the Fifth Circuit recently held "the NFA's shall-issue licensing regime is presumptively constitutional under [*Bruen*]" in *United States v. Peterson*, 161 F.4th 331, 334 (5th Cir. 2025). The court explained the "NFA provides that the ATF will deny a firearm-making application if the 'making or possession of the firearm would place the person making the firearm in violation of the law,'" *id.* at 339 (quoting 26 U.S.C. § 5822), which "is precisely the 'objective[] and definite' licensing criterion held permissible under *Bruen*," *id.* (quoting *Bruen*, 597 U.S. 38 n.9). The court concluded the presumption was also not overcome because there was no evidence that the "NFA has been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times in processing license applications.'" *Id.* at 340 (quoting *Bruen*, 597 U.S. at 38 n.9).

For these reasons, the NFA is presumptively constitutional. While Plaintiffs emphasize the NFA's potential penalties, *see* Pls.' Reply at 14-15, they do not dispute that the NFA's registration requirements are objective and definite, and in no way suggest abusive ends. And as in *Peterson*, no evidence in the record overcomes the presumption by demonstrating that the NFA's registration scheme imposes exorbitant fees or lengthy wait times. *See* Defs.' Br. at 27-28 (citing $0 tax and wait times); *see also* ATF, *Current Processing Times*, https://perma.cc/5FZW-3U9C (6-day processing for eForm 1 Application and 10-day processing for eForm 4 Application).

8

## C. The NFA is consistent with the historical tradition of firearms regulation.

As explained in Defendants' opening brief, under *Miller*, *Heller*, *Wilson*, and *Robinson*, the plain text of the Second Amendment does not guarantee the right to keep and bear short-barreled rifles and shotguns unencumbered by any regulatory burden.[2] The Court therefore need not reach the historical analysis at *Bruen*'s second step.

At any rate, the NFA's regulation of short-barreled rifles and shotguns is consistent with this Nation's historical tradition of firearms regulation, and therefore comports with the Second Amendment. *See* Defs.' Br. at 16-27. As a threshold matter, Plaintiffs' historical analysis is at odds with the analysis required by *Bruen* as clarified in *Rahimi*. In *Rahimi*, the Court explained that the "appropriate analysis involves considering whether the challenged regulation is consistent with *the principles* that underpin our regulatory tradition." 602 U.S. at 692 (emphasis added). "A court must

---

[2] Plaintiffs argue that the record establishes that short-barreled rifles and shotguns are in common use, and thus protected by the Second Amendment, but this misstates the inquiry. *See* Pls.' Reply at 9-10. "[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625; *see also id.* at 627 (Second Amendment does not protect "dangerous and unusual weapons"). That Plaintiffs cite the number of short-barreled rifles and shotguns that may be in circulation does not establish that those firearms are in common use for lawful purposes. Plaintiffs have not provided evidence about how many individuals own these firearms, how the number of these firearms compares to the total number of firearms, or any other information that would permit the Court to conclude that they are "in common use." And "[e]ven presuming that the numerical approach is the correct inquiry, the number of [firearms], in the abstract, does not establish such weapons are in common use by law-abiding citizens for lawful purposes such as self-defense." *United States v. Chan*, 2024 WL 4028019, at *6 (D. Hawaii Sept. 3, 2024); *see also Johnson v. United States*, 576 U.S. 591, 640 (2015) (Alito, J., dissenting) (short-barreled shotguns "are not typically possessed for lawful purposes"). Separately, short-barreled rifles and shotguns are particularly dangerous because they combine high destructive power with concealability. *See id.* at 640, 642 (short-barreled shotguns are "notoriously dangerous" because they "combine the deadly characteristics of conventional shotguns with the more convenient handling of handguns"); *United States v. Thompson Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (NFA's "regulation of short-barreled rifles" targets "a concealable weapon" "likely to be used for criminal purposes").

9

ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit." *Id.* "And when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster," because although the "law must comport with the principles underlying the Second Amendment," "it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (citation modified). Indeed, *Rahimi* analogized to multiple historical legal regimes to discern whether one modern law fit within our regulatory tradition. *See id.* at 693-699 (analogizing to historical surety laws and going armed laws).

Plaintiffs criticize Defendants for "[a]rguing in the alternative," and assert that, for one reason or another, the different laws cited by Defendants are not the NFA's historical twin. Pls.' Reply at 9. But Plaintiffs misunderstand Defendants' argument and misapply *Bruen* and *Rahimi*. Defendants have argued not just that each law is a representative historical analogue, but that all of these laws—taken together—demonstrate that the NFA's regulation of dangerous and unusual weapons like short-barreled rifles and shotguns is consistent with the principles underpinning our Nation's regulatory tradition. Defendants approach is particularly warranted because while Plaintiffs purport to challenge the NFA's "barrel-length regime" as a monolith, in reality, they invoke the many statutory and regulatory provisions that implement that regime, such as those addressing registration, taxation, penalties, and restrictions on interstate travel. *See, e.g.*, Pls.' Mot. at 5-9. Defendants have thus reasonably cited multiple historical legal regimes to illustrate that these various NFA provisions are "analogous enough" to their "historical precursors" in "[w]hy and how" they allegedly

10

burden the Second Amendment right. *Rahimi*, 602 U.S. at 692 (citation omitted).

Setting aside the issues with Plaintiffs' framing, Plaintiffs' arguments are not persuasive. Plaintiffs selectively address the historical laws cited by Defendants, distinguishing some while ignoring others. For instance, Plaintiffs have no response to the laws banning the possession of dangerous and unusual weapons, *see* Defs.' Br. at 18-19, banning or taxing firearms based on size, *id.* at 19, or requiring sellers of certain "deadly weapons" to keep a register of all such weapons, *id.* at 21. Plaintiffs' criticisms of other laws cannot be taken seriously when they ignore the laws most on point.

Those criticisms themselves fare no better. First, Plaintiffs attempt to distinguish Defendants' Statute of Northampton line of authorities by emphasizing the offensive aspect of those laws. *See* Pls.' Reply at 11-12. But this ignores the analogous aspects of those laws—the portions concerned with being "armed" with "dangerous and unusual weapons"—the precise issue the NFA addresses. *See* Defs.' Br. at 17-18. That one component of a historical law is distinct from the modern regulation does not necessarily mean that the modern regulation is not "relevantly similar." *Rahimi*, 602 U.S. at 692 (citation omitted). The law need not be a "dead ringer." *Id.* And as previously explained, these laws show that there is a longstanding tradition of regulating dangerous and unusual firearms that pose a threat to public safety, illustrating that "why" the NFA minimally burdens the Second Amendment right is consistent with the principles underpinning our regulatory tradition.

Plaintiffs also criticize Defendants' historical laws requiring license or inspection to commercially sell gunpowder. *See* Pls.' Reply at 12-13. But Defendants

11

cited those laws—along with others requiring registration, survey, and inspection of firearms—to illustrate that there is historical precedent for "how" the NFA regulates the Second Amendment right. *See* Defs.' Br. at 20-22. Though Plaintiffs invoke time and again the threat of "felony liability" for the possession of short-barreled rifles and shotguns, it bears repeating that the NFA does not prohibit the legal possession of those firearms—it simply imposes additional regulatory requirements, like registration. Thus, Defendants have cited these laws to show that the NFA's regulatory requirements are relevantly similar to those that our tradition is understood to permit.

Next, Plaintiffs criticize Defendants' citation to militia inspection and survey laws as well as proved-barrel laws. *See* Pls.' Reply at 13. But again, Defendants have cited these laws to demonstrate that the types of regulatory burdens imposed by the NFA fall within an established historical tradition of regulatory practices. *See* Defs.' Br. at 20-22. And while these historical laws may have served military readiness and quality-control goals, they also ensured that governments had accurate and timely records of the individuals who owned firearms in their jurisdiction, just like the NFA. *See United States v. Dangleben*, 2023 WL 6441977, at *8 (D.V.I. Oct. 3, 2023) ("[M]uster and registration laws . . . allowed the government to roughly account for and track the location of the firearms in colonial America."); *United States v. Padgett*, 2023 WL 3483929, at *9 (D. Alaska Jan. 4, 2023) ("significant regulation of firearms in colonial America" like "registration and safety requirements" was "designed to ensure responsible and safe gun ownership"); *United States v. Brabham*, 2024 WL 3165467, at *6 (M.D. Pa. June 24, 2024) ("colonial laws . . . requir[ing] registration or impos[ing]

12

taxes on firearms" "show the beginning of legislative efforts to track firearms").

Lastly, Plaintiffs contend that Defendants' historical taxes and seller registration laws are not relevantly similar. *See* Pls.' Reply at 14. But it's hard to see how a law requiring the sellers of certain "deadly weapons" like pistols and revolvers to "keep" and have ready for inspection "a register of all such weapons sold," including the purchaser's name, age, and purpose for purchase, Ill. Stat. Ann. Crim. ch. 38, ¶ 54 (1885), is not a relevant precursor to the NFA's registration scheme, which requires sellers to keep records of "the importation, manufacture, making, receipt, and sale, or other disposition, of firearms." 26 U.S.C. § 5843. And the tradition of taxing certain types of weapons also mirrors the NFA. *See* Defs.' Br. at 23-24.

## III.    Plaintiffs' claims challenging ATF's Rule should be dismissed as moot.

Plaintiffs do not contest that their claims challenging ATF's Rule are moot. *See* Pls.' Reply at 8. There is therefore no dispute that Claim III should be dismissed, and Claim I should be partially dismissed insofar as it challenges ATF's Rule.

## IV.    Plaintiffs are not entitled to injunctive relief.

In reply, Plaintiffs do not even attempt to belatedly satisfy the prerequisites to injunctive relief. *See* Pls.' Reply at 20. There is thus no basis for the Court to enter an injunction of any kind. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## CONCLUSION

Accordingly, the Court should dismiss the claims against ATF Rule's and grant Defendants summary judgment on the Second Amendment challenge to the NFA.

13

Dated: January 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

/s/ Taylor Pitz
TAYLOR PITZ
CA Bar No. 332080
JODY D. LOWENSTEIN
MT Bar No. 55816869
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Attorneys for Defendants*

14

**CERTIFICATE OF SERVICE**

On January 30, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Middle District of Florida, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Taylor Pitz
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice
